In re Reese.

(No. 81AP-739—Decided February 23, 1982.)

*Mr. Michael Miller,* prosecuting attorney, and *Mr. Michael Burns,* for appellee.

*Mr. James Kura,* county public defender, and *Mr. W. Curtis Stitt,* for appellant.

Norris, J. The mother of Renee Reese appeals from a judgment of the Court of Common Pleas of Franklin County, Division of Domestic Relations, Juvenile Branch, finding her daughter to be a neglected child, making the child a ward of the court, committing her to the temporary custody of the Franklin County Children Services Board, and approving a plan by the board providing that the child remain, at least temporarily, in the care of the mother's aunt.

On December 11, 1980, the aunt filed a complaint in the juvenile branch, pursuant to R.C. 2151.27, alleging that Renee Reese was a neglected child, as that term is defined by R.C. 2151.03(B), and stating that the complainant wanted custody of Renee.

According to testimony adduced at

the hearing on May 6, 1981, the mother talked to her aunt on October 11, 1980, and asked her to care for two-year old Renee because the mother had a drug problem and wanted to get into a drug rehabilitation program; that between October 11, 1980, and the date of the hearing, the aunt had provided Renee with any care needed, including adequate food, clothing, shelter, supervision, and health care, without any monetary assistance from the mother, and the child enjoyed good health; that since March 1, 1981, the aunt had received Aid to Dependent Children payments and medical care benefits for the child from the welfare department; that the mother had visited with the child on only three occasions; that there were six persons living in the aunt's apartment which consisted of two bedrooms, a kitchen, bath, and living room; and that the aunt had seen the mother "shoot" drugs on three successive days in January.

The aunt testified that, while the mother told her she had abused the child, the child bore no bruises on October 11; that the reason she filed the complaint was because she wanted custody of the child; and that she had never asked for financial assistance from the mother and told the mother she was not interested in financial help from her.

The mother testified that she had offered support money for the child but her aunt said she did not want any money; that she had given the child to her aunt to keep for only a week and had given her enough of the child's clothing for a week; that she had not visited the child more often because her aunt had moved to an address unknown to her; that she no longer had a drug problem; and that shortly before the complaint was filed she asked her aunt to return Renee.

The testimony of a caseworker was entered by stipulation to the effect that the mother had told the caseworker, a week before the hearing, that she was still "shooting" drugs. The mother's attorney emphasized that he was not stipulating the truth of the statement.

The referee who heard the testimony found that Renee was a neglected child for the reason that she was not receiving adequate care from the aunt because her apartment had only two bedrooms, and also due to the faults or habits of Renee's parents—that the father was not supporting the child; that her mother still had a drug problem at the time of the hearing; that she had not attempted to support the child since October 11 and had failed to either visit the child regularly or to retrieve her in spite of the fact that she easily could have discovered the aunt's whereabouts from relatives; and that she had not assisted the aunt in obtaining medical care for the child. The referee recommended that the child be made a ward of the court, with a temporary commitment to the Franklin County Children Services Board.

The trial court overruled objections to the referee's report, and in its decision included this language:

"The Court further finds that the child should be committed into the custody of the Franklin County Children Services temporarily so that the Franklin County Children Services can work with the mother to attempt to bring about a re-unification. Re-unification obviously will require the mother solving her drug problems and if this can't be done within a reasonable time, the Court should make long term arrangements for the child. The re-unification plan should further provide for the child to remain in the care of the aunt who seems to be doing a satisfactory job with the child even though her quarters are not what all of us would desire in the way of space and who also would like to see the child reunited with the mother when the mother is cured of her drug problems."

Counsel for the child's mother raises this assignment of error:

"The trial court erred in adjudging Renee Reese to be a neglected child

within the meaning of section 2151.03(B), Ohio Revised Code, and in ordering a disposition pursuant to such adjudication, where the state failed to produce clear and convincing evidence that the child lacked proper parental care at the time of the hearing."

Portions of three sections of the Revised Code are relevant to our consideration of this appeal:

"Any person having knowledge of a child who appears to be * * * neglected, * * * may, with respect to such child, file a sworn complaint in the juvenile court * * *.

"* * *

"If the complainant * * * is requesting permanent custody of the child * * * the complaint shall contain a prayer specifically requesting such custody." (R.C. 2151.27.)

"As used in sections 2151.01 to 2151.54, inclusive, of the Revised Code, 'neglected child' includes any child:

"* * *

"(B)   Who lacks proper parental care because of the faults or habits of his parents, guardian, or custodian;" (R.C. 2151.03.)

"Under sections 2151.01 to 2151.54 of the Revised Code, a child whose home is filthy and unsanitary; whose parents * * * or custodian permit him to become * * * neglected * * *; whose parents, * * * or custodian, when able, refuse or neglect to provide him with necessary care, support, medical attention, and educational facilities; or whose parents * * * or custodian fail to subject such child to necessary discipline is without proper parental care * * *." (R.C. 2151.05.)

Appellant argues that the trial court's finding that Renee was a neglected child is not supported by clear and convincing evidence because the mother obtained proper parental care for the child, during the time she was unable to provide that care personally, by taking the child to her aunt who in turn provided proper parental care. In support of her position, she cites two decisions of this court found in *In re Darst* (1963), 117 Ohio App. 374 [24 O.O.2d 144], and in *In re Crisp* (Feb. 5, 1981), Franklin App. No. 80AP-678, unreported.

While both of these cases involved determinations by the trial courts that children were dependent children, as defined in R.C. 2151.04, the rationale of our holdings is applicable also to cases involving neglected children, as defined by R.C. 2151.03, since both sections involve a determination of those circumstances under which the state is warranted in assuming protection and guardianship of children, in contravention of the natural privileges and interests of parents involved in the care and custody of their children. In both cases parents had entrusted the care of their children to relatives who then later refused to return the children, and we held that the state's interest in assuming guardianship arises only if there is no one who is meeting the obligations of care, support, and custody, which are owed by the children's parents.

Without question, in view of the totality of the evidence, the state failed in its burden of showing by clear and convincing evidence that the aunt was not providing proper parental care for the child.[1]

Apparently, the trial court misapprehended what we said in *Darst* and *Crisp* when a portion of the trial court's decision is considered:

"* * * Counsel for the mother contends that as long as the child is receiving adequate care, regardless of the source, the state cannot find the child to be a

---

[1] As a practical matter, the trial court rejected the finding of its referee on this point when it approved the child's being placed with the aunt. We assume the referee recognized such a finding, however tenuous, was necessary in order to comply with our decisions in *Darst* and *Crisp*.

neglected child. Stated in its simplest terms the counsel for the mother would contend that when a child is neglected by a parent the state would have to let the child expire in order to have a later finding that the child was a neglected child. It is the duty of the state to protect children who have been neglected by their parents and the fact that some interested relative or public agency provides care does not negate the finding of neglect. In this particular case, the mother turned her child over to the aunt, however, she continued to neglect the child by not providing any funds from the ADC money she was receiving to the aunt for the child and more important, without having any contact or consultation with the aunt concerning the child's well being or visitation with the child."

In neither case did we infer that "* * * the state would have to let the child expire in order to have a later finding that the child was a neglected child." Had it been shown by clear and convincing evidence that neither the parent nor the custodian-aunt was providing proper parental care — that the child was "without proper parental care" as that term is defined by R.C. 2151.05 — then the trial court's order would have been warranted.

Undoubtedly, the evidence would support a conclusion that the mother, at the time of the hearing, was not a suitable custodian for the child. However, the state's primary objective, in an action brought pursuant to R.C. 2151.27 and 2151.03, is not to decide conflicting claims to custody; its objective is to determine if a child is receiving proper parental care, and if that care is being provided by a relative pursuant to an arrangement initiated by the child's parent, then the child is not a neglected child. *In re Darst, supra; In re Crisp, supra.* That the General Assembly contemplated that proper parental care can be provided by persons other than the parents of a minor child, is made manifestly clear by its reference to "guardian" and "custodian" in R.C. 2151.03(B), and to "step-parents," "guardian" and "custodian" in R.C. 2151.05.

The statutory scheme provided by the three sections of the Revised Code quoted above was not intended by the General Assembly for use as a tool by persons seeking custody of a child who has been temporarily entrusted to their care by a parent when the parent then requests the return of the child. See *In re Kronjaeger* (1957), 166 Ohio St. 172 [1 O.O.2d 459]; *In re Minton* (1960), 112 Ohio App. 361 [15 O.O.2d 283]. While the juvenile court is authorized to make a custody order once a child is found to be a neglected child, selection of a custodian in such an action is ancillary to the initial determination of whether or not the child is receiving proper parental care. Unfortunately, where the primary objective of the complainant in filing a complaint under R.C. 2151.27 is to obtain custody, there appears to be a tendency to confuse the issues which are determinative of selecting a proper custodian — suitability of prospective custodians and the best interests of the child — with the issues which are determinative of a finding that the child is a neglected child. Accordingly, where, under circumstances similar to those presented by this case, the principal objective of the complainant is custody, that objective should be litigated either in a custody action brought under R.C. 2151.23(A)(2) (see *In re Perales* [1977], 52 Ohio St. 2d 89 [6 O.O.2d 293]; *In re Torok* [1954], 161 Ohio St. 585 [53 O.O. 433]), or upon an application for a writ of habeas corpus brought under R.C. 2151.23(A)(3) (see *In re Young* [1979], 58 Ohio St. 2d 90 [12 O.O.3d 93]; *In re Tilton* [1954], 161 Ohio St. 571 [53 O.O. 427]), where the court's concern is directed toward parental suitability and the best interests and welfare of the child.

The assignment of error is sustained,

and the judgment of the trial court is reversed.

*Judgment reversed.*

WHITESIDE, P.J., and STRAUSBAUGH, J., concur.