OPINION
Appellant, Erica Johnson, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, finding her son, Shane Michael Johnson, to be a neglected and dependent child, making him a ward of the court, and committing him to the temporary custody of Franklin County Children Services ("FCCS").
On December 14, 1999, an FCCS caseworker filed a complaint pursuant to R.C. 2151.27, alleging that Shane was a neglected and dependent child, as those terms are defined by R.C. 2151.03(A)(2) and 2151.04(C), respectively, and stating that Shane's paternal grandparents, Carl and Theresa Hicks, wanted custody of Shane.
An adjudicatory hearing was held before a magistrate on February 23 and 24, 2000, at which appellant testified that in November 1999, she and her three children, Shane, age four, Kaitlin Wampler, age three, and Ryan Wampler, age eighteen months,[1] lived with her parents and grandparents in a small farmhouse in Vinton County. Appellant and her children were asked to leave the home sometime around November 20, 1999. At the time, appellant was unemployed and had no ancillary source of income. Her current husband, Billy Wampler, was incarcerated on domestic violence charges.
Shortly thereafter, appellant placed Kaitlin and Ryan in respite care with Vinton County Children Services. She then called the Hickses and asked if they would care for Shane for three to four weeks until she could secure a place to live and accumulate enough money to properly care for Shane. According to appellant, she contacted the Hickses because she was on good terms with them and because Shane had stayed with them on prior occasions.
Appellant took Shane to the Hickses' home on November 23, 1999; however, she forgot to bring along his clothing. She testified that she did not think the lack of clothing was a problem because she assumed that the Hickses had retained some of Shane's clothing from previous visits. At appellant's request, appellant's sister delivered a bag of clothing to the Hickses approximately three days later.
Thereafter, appellant moved in with her stepbrother in Chillicothe. She lived with him for a short time and then apparently was reunited with Kaitlin and Ryan. A friend allowed her and the children to live rent-free in a one-bedroom trailer in Massieville. The friend also assisted her with food, diapers, and other essentials for the children.
Meanwhile, Shane was still living with the Hickses. Appellant made no attempt to contact Shane until December 15, 1999, at which time she called the Hickses and spoke with the Hickses' daughter-in-law, Tammy. Appellant told Tammy that she had a place to live and wanted Shane returned to her. Tammy told her that Mrs. Hicks had initiated proceedings to obtain custody of Shane. Appellant called the Hickses again just before Christmas 1999 and told Mrs. Hicks that she had a place to live, that she wanted to see Shane, and that she was eager for him to live with her again. According to appellant, Mrs. Hicks told her she would have to call FCCS to arrange a meeting with Shane. Appellant admitted that she did not visit Shane until February 19, 2000. As of the date of the hearing, appellant, Kaitlin and Ryan were still living in the one-bedroom trailer. Appellant testified that she had recently purchased a three-bedroom trailer on land contract and planned to move in over the upcoming weekend.
Mrs. Hicks testified that around November 20, 1999, appellant called and asked if the Hickses would be willing to care for Shane for approximately three weeks. The Hickses agreed to this arrangement. Appellant dropped Shane off at the Hickses home on November 23, 1999, three days prior to the agreed upon date. Appellant did not tell the Hickses where she was living, nor did she leave a telephone number where she could be reached. At the time Shane was dropped off, he was ill and was not current on his immunizations. He had no clothing other than what he was wearing. Although it was late November, he had no winter coat. According to Mrs. Hicks, appellant said she would bring Shane's clothing the next day. A few days later, appellant's sister dropped off a bag of clothing at the Hickses' home. Mrs. Hicks testified that the amount of clothing was inadequate and much of it was the wrong size.
On December 14, 1999, Mrs. Hicks called FCCS to inquire as to what constituted "abandonment" of a child. Mrs. Hicks testified that she made such inquiry because Shane had been delivered ill, with no clothing, no winter coat and because appellant had had no contact with Shane since dropping him off on November 23, 1999. One day later, on December 15, 1999, appellant called the Hickses for the first time to inquire about Shane.
Mrs. Hicks testified that since Shane began living with her on November 23, 1999, she had seen to his medical care, including arranging for his immunizations to be brought up to date. She further testified that while he was in her care, Shane was provided with adequate food, shelter, clothing, and supervision, without any monetary assistance from appellant. She further stated that she contacted FCCS because she thought it was in Shane's best interest to do so, not because she wanted to obtain custody of him.
Shane's father, Phillip Hicks, testified that he was incarcerated on November 15, 1999, and would not be released until May 12, 2000.
After the presentation of testimony, the magistrate concluded that the state had proven by clear and convincing evidence that Shane was a neglected and dependent child upon the basis that Shane's father was incarcerated and unable to support him; that appellant had cohabited with Billy Wampler after Wampler was under court order to have no contact with Shane; that at the time appellant left Shane with his grandparents, she had no housing and was financially unable to support him; that appellant had placed her other children in respite care; that appellant left Shane with his grandparents when he was ill, not current on his immunizations and without adequate clothing, including no winter coat; that appellant had not attempted to support Shane since November 23, 1999, and had failed either to visit him or to keep the grandparents apprised of her whereabouts from November 23, 1999 to December 15, 1999; and that appellant's housing situation remained uncertain. The magistrate recommended that Shane be made a ward of the court, with a temporary commitment to FCCS. On June 1, 2000, the trial court overruled appellant's objections to the magistrate's decision and adopted the magistrate's recommendation as the order of the court. Appellant has filed the instant appeal, setting forth eight assignments of error:
 [1.] The Trial Court erred in overruling Appellant's Motion to Dismiss the Complaint as to Neglected child, for failure to state a cause of action.
 [2.] The Trial Court erred in overruling Appellant's Motion to Dismiss the Complaint as to Dependent Child, for failure to state a cause of action.
 [3.] The Trial Court erred in overruling Appellant's Motion to Dismiss the Complaint as to Neglected Child, based upon the principal objective of the person initiating the Complaint was to gain custody of her grandson, Shane Johnson.
 [4.] The Trial Court erred in finding Neglected Child/Dependent Child, there being insufficient evidence for either cause of action.
 [5.] The Trial Court erred in finding Neglected Child/Dependent Child, said decision being against the manifest weight of the evidence.
 [6.] The Trial Court erred in overruling Appellant's Motion for Dismissal at the close of the case for the prosecution.
 [7.] The lower court erred in overruling Appellant's Objections to Decision of Magistrate based upon the decision being against the manifest weight of the evidence.
 [8.] The lower court erred in overruling Appellant's Objections to Decision of Magistrate based upon the Complaint failing to state a cause of action.
Appellant's first, second, third and eighth assignments of error present essentially the same contention — that the juvenile court erred in denying her motion to dismiss the complaint upon the grounds that the complaint failed to state a cause of action in either neglect or dependency.
R.C. 2151.27 provides, in pertinent part, as follows:
 (A) Any person having knowledge of a child who appears to be a * * * neglected, or dependent child, may file a sworn complaint with respect to that child in the juvenile court of the county in which the child has a residence or legal settlement, or in which the * * * neglect, or dependency allegedly occurred. * * * The sworn complaint may be upon information and belief, and in addition to the allegation that the child is a * * * neglected, or dependent child, the complaint shall allege the particular facts upon which the allegation that the child is a * * * neglected, or dependent child * * * is based.
In addition, Juv.R. 10(B)(1) provides, in relevant part:
 Complaint; general form The complaint, which may be upon information and belief, shall satisfy all of the following requirements:
 (1.) State in ordinary and concise language the essential facts that bring the proceeding within the jurisdiction of the court * * *.
The basis of R.C. 2151.27 and Juv.R. 10(B)(1) is twofold:
 * * * First, in an action involving the possible severance of custody rights, a respondent to such a complaint is entitled to be apprised of the basis of the state's claim in order to properly prepare a defense. * * * Second, the juvenile court, being a court of limited jurisdiction, must be able to ascertain at an early state of the proceeding whether or not it has jurisdiction over the subject matter of the claim. [State v. Sims (1983), 13 Ohio App.3d 37, 42-43.]
The Ohio Supreme Court held in the first paragraph of the syllabus ofIn re Hunt (1976), 46 Ohio St.2d 378, as follows:
 A complaint under Juv.R. 10 and R.C. 2151.27 alleging that a child is dependent must state the essential facts which bring the proceeding within the jurisdiction of the court. (Juv.R. 10 and R.C. 2151.27.)
The complaint examined in Hunt read as follows:
 "The undersigned, Lillian Hunt, says that she has knowledge of certain children, to-wit: Christopher Steven and David Michael Hunt age 7 and 5 years, respectively * * * who appear to be dependent in that their condition or environment is such as to warrant the state, in the interests of the children, in assuming their guardianship * * *." [Id. at 379.]
The Hunt court noted that much of the language in the complaint was a direct quotation of R.C. 2151.04(C). Id. In addition, the court noted that prior to 1969, R.C. 2151.27 provided that a complaint was sufficiently definite by simply using the words "neglected" or "dependent" and that courts generally upheld the sufficiency of complaints containing such conclusory language. Id., citing In re Anteau
(1941), 67 Ohio App. 117; In re Hayes (1938), 29 Ohio Law Abs. 154. The court further noted, however, that R.C. 2151.27 was amended in 1969 to its present form, and in 1975 Juv.R. 10(B) was added. The court found the complaint insufficient, as it recited only an allegation of dependency and did not set forth any particular facts as required by R.C. 2151.27
and Juv.R. 10(B)(1).
In addition to alleging neglect and dependency in language virtually identical to R.C. 2151.03(A)(2) and 2151.04(C), the complaint in the instant case alleges the following facts:
 * * * Parents are divorced. Mother, Erica Johnson's whereabouts are unknown to the complainant at the time of filing. Father, Phillip Hick's whereabouts are known. The family first became known to Franklin County Children Services in 1995. On or about November 29, 1999 Children Services received a referral stating mother has dropped this child off at the paternal grandparents' home. On November 23, 1999 mother dropped this child off at the paternal grandparents' home requesting they take care of him for a few days. Mother did not provide any clothing for this child. A bag of clothes were left on the paternal grandparents' front porch on November 26, 1999 however these clothes were not suitable. Mother has a history of continually moving between, Franklin, Pickaway, Ross and Hocking counties and has also been involved with the child welfare agencies of these counties. Father will be incarcerated at Franklin County Community Based Correctional Facility until May 2000, case number 96CR5534 and 97CR5887. * * *
We find the complaint herein sufficient to state a cause of action as it provides more than a bare allegation of neglect and dependency; it alleges the particular facts upon which the allegations of neglect and dependency are based. Indeed, the complaint alleges that as of the date of its filing, appellant's whereabouts were unknown; Shane's father was incarcerated; and that appellant had left Shane, without appropriate clothing, with his grandparents. Accordingly, the first, second, third and eighth assignments of error are not well-taken.
As assignments of error four, five, six and seven are interrelated, we will address them jointly. By these assignments of error, appellant contends that the juvenile court's finding that Shane was a neglected and dependent child was not supported by clear and convincing evidence because she obtained adequate parental care for Shane, during the time she was unable to provide that care personally, by voluntarily taking him to his paternal grandparents who in turn provided adequate parental care. In support of her position, appellant cites two decisions of this court, In re Crisp (Feb. 5, 1981), Franklin App. No. 80AP-678, unreported, and In re Reese (1982), 4 Ohio App.3d 59, and a decision of the Ohio Supreme Court, In re Riddle (1997), 79 Ohio St.3d 259.
A finding of neglect and/or dependency must be supported by clear and convincing evidence. R.C. 2151.35(A). Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoption ofHolcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
As pertinent to the instant matter, the term "neglected child" is defined in R.C. 2151.03(A)(2) as any child "[w]ho lacks adequate parental care because of the fault or habits of the child's parents, guardian, or custodian[.]" A "dependent child," as that term is defined in R.C.2151.04(C), is one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]"
In Crisp, supra, a case involving an allegation of dependency under R.C. 2151.04(C), this court found that if a child is receiving proper care from relatives to whom the parent entrusted the child's care, the child is not a dependent child. The Crisp court relied on our previous holding in In re Darst (1963), 117 Ohio App. 374; wherein we stated at 379:
 * * * [T]he state's interest under Section 2151.04, Revised Code, arises only if there is no one who is meeting the obligations of care, support and custody which are owed by the parent. * * * The fact that relatives are providing that care and support is immaterial to the determination of dependency. * * *
In reaffirming Darst, we stated in Crisp:
What we said in 1963 in Darst still applies today in this case.
 The state's evidentiary burden in this case, in order to invoke the state's interest in assuming the guardianship of Billy Crisp, was to prove by clear and convincing evidence that no one was providing care, support and custody for Billy Crisp. R.C. 2151.35.
 The state clearly failed in its burden. Most of the state's evidence was directed toward establishing that Billy Crisp's parents were unfit to care for him. On the critical issue of examining Billy Crisp's condition or environment to determine whether no one was providing care, support and custody for the child, even the state's witnesses agreed that he was receiving that care, support and custody from his maternal grandmother.
In In re Reese, supra, this court applied the rationale in Darst andCrisp to cases involving neglected children as defined in R.C.2151.03(A)(2). Specifically, this court held that when a parent temporarily, through an informal agreement, places a child with a relative, and that relative provides proper care pursuant to the informal agreement, the child cannot be found to be a neglected child.
In Riddle, supra, the Ohio Supreme Court approved of the reasoning underlying Darst and Crisp. "Given that fault (parental or otherwise) is not an issue in an R.C. 2151.04(A) dependency inquiry, so that the focus is exclusively on the child's situation, a child who is receiving proper care pursuant to an arrangement initiated by the parent with a caregiver is not a dependent child under R.C. 2151.04(A)." Id. at 263. The court also approved of the rationale behind Reese:
 As we read Reese, the parent's voluntary act of temporarily placing the child with a responsible relative is an indicator of proper parental care, and does not support a finding that the parent is at fault. Therefore, the care furnished by the relative can be imputed to the parent. "In such situations, the state has no interest in assuming guardianship since the obligations of care, custody, and support are being met." * * * [Id. at 263.]
The Riddle court, however, declined to extend the holdings in Darst,Crisp and Reese to the matter before it because the court found a significant factual distinction between the situations in those cases and the situation in Riddle. In Darst, Crisp and Reese, the parent voluntarily arranged for the child to be placed with a relative. InRiddle, the paternal grandparents were temporarily caring for the child pursuant to an agreement initiated by a children services' caseworker. The agreement provided that while the grandparents cared for the child, the father, who was the custodial parent, was to acquire suitable housing and achieve a consistent source of income during a specified time period. When the father made little progress toward achieving these goals, the children services' board filed a complaint alleging that the child was neglected and dependent. From the time of the agreement to the dependency/neglect hearing, the child was receiving proper care from his grandparents. In affirming the determination of neglect, the court found that although the child was receiving proper care from his grandparents, no credit could be imputed to the father, as the agreement for the care of the child was initiated by a caseworker and not voluntarily arranged by the father.
The instant case is factually analogous to the situations in Darst,Crisp and Reese. Both appellant and Mrs. Hicks testified that appellant voluntarily called the Hickses and arranged for them to care for Shane during the time she was unable to provide that care personally and that the Hickses agreed to such an arrangement. Mrs. Hicks testified that she provided Shane with adequate food, shelter, clothing, supervision and medical care during the time Shane was in her care. As the evidence established that the Hickses provided Shane with adequate parental care pursuant to an agreement initiated by appellant, we find, pursuant toDarst, Crisp, and Reese, that the state failed in its burden of proving by clear and convincing evidence that Shane was either neglected or dependent. Accordingly, the juvenile court erred in finding Shane to be a neglected and dependent child and in committing him to the temporary custody of FCCS. The fourth, fifth, sixth and seventh assignments of error are well-taken.
For the foregoing reasons, appellant's first, second, third and eighth assignments of error are overruled, and her fourth, fifth, sixth and seventh assignments of error are sustained. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law, consistent with this opinion.
 _________________ PETREE, J.
BOWMAN and TYACK, JJ., concur.
[1] Shane Michael Johnson is the only subject of the proceedings in this matter.