DECISION AND JUDGMENT ENTRY
{¶ 1} Michelle Jones appeals from a Hocking County Common Pleas Court judgment that found her three children to be dependent and committed them to the temporary custody of Hocking County Children Services ("HCCS"). She contends the trial court erred by denying her motion to dismiss at the close of the state's case. However, given Ms. Jones's suicidal and homicidal ideations and the social worker's testimony regarding his evaluation of Ms. Jones, the trial court could reasonably conclude that the children's environment warranted the state in assuming their guardianship. Because the state presented sufficient evidence of dependency to satisfy the clear and convincing standard, the court did not err in denying Ms. Jones's motion to dismiss.
 {¶ 2} In addition, Ms. Jones argues that the children were not dependent because they were receiving proper parental care under arrangements she had made with the Reeds and Goods. Although the Reeds and the Goods helped Ms. Jones care for her children, they were not providing full-time parental care for the children on the date alleged in the complaint. Rather, the children were under Ms. Jones's care at that time. Because there is competent, credible evidence to support the trial court's dependency finding, we affirm that portion of the judgment.
 {¶ 3} Ms. Jones also challenges the children's disposition, arguing that the hearing failed to comply with statutory and constitutional due process requirements. First, she contends the magistrate failed to hold the hearing within 90 days of the filing of the complaint as required by R.C. 2151.35(B)(1) and Juv.R. 34(A). HCCS filed the complaint on June 22, 2004. The magistrate held the dispositional hearing immediately after the adjudicatory hearing on August 31, 2004, 70 days after the filing of the complaint. Thus, the dispositional hearing was held within the 90-day time requirements of R.C. 2151.35(B) and Juv.R. 34(A).
 {¶ 4} Next, she argues that the magistrate did not afford her an opportunity to present any evidence at the hearing. Because Ms. Jones stipulated to the disposition for her two daughters, she is precluded from challenging that disposition. As for the disposition of her son, the transcript indicates that Ms. Jones did not object to the way in which the magistrate conducted the hearing. Thus, we conclude that she has waived any argument relating to that issue.
 {¶ 5} Finally, Ms. Jones argues that the trial court failed to make the reasonable efforts finding required under R.C. 2151.419(A). The court's decision does not contain a factual finding about whether HCCS made reasonable efforts to reunite Ms. Jones and her children. However, by stipulating to the girls' disposition, Ms. Jones agreed to all aspects of their disposition, including the reasonable efforts aspect. Thus, the court's failure to include this finding concerning the girls' disposition is harmless. But the same is not true for the son. The record contains some evidence indicating that HCCS was providing services to the family; however, it does not give a clear picture of those services. Thus, we are unwilling to say that the error is harmless relative to the son's disposition. Accordingly, we reverse that portion of the court's judgment and remand so that the court can make a reasonable efforts determination with respect to the son's disposition.
 {¶ 6} Michelle Jones is the mother of three children: Michael Ohm (DOB: 10/24/99), Hailey Grice (DOB: 8/23/02), and Emily Grice Jones (DOB: 1/6/04). Michael is the child of Dale Ohm, while Hailey and Emily are the children of Keith Grice.
 {¶ 7} On June 21, 2004, the Hocking County Juvenile Court issued a protective order placing Ms. Jones's children in the temporary custody of HCCS. The next day, HCCS filed a complaint alleging that the children were dependent as defined in R.C. 2151.04(C). The complaint indicated that while visiting Mr. Grice in jail, Ms. Jones told him that she was planning on drowning her children and then killing herself. When a Sheriff's Deputy spoke with Ms. Jones, she did not deny making this statement. Therefore, the Deputy transported Ms. Jones to the Sheriff's Office and arranged for an evaluation by a social worker from Tri-County Mental Health and Counseling. The children were left in the care of neighbors. Upon evaluating Ms. Jones, the social worker determined that she was in need of in-patient psychiatric care. Thus, he arranged for an emergency commitment to the Appalachian Behavioral Health Care Facility.
 {¶ 8} The complaint also detailed Ms. Jones's history with HCCS, which consisted of two occasions when Hailey was improperly supervised. For instance, in June 2004, HCCS received a referral alleging that Hailey was in the middle of State Route 93 while Ms. Jones was in the house. The history also consisted of an incident that occurred about two weeks prior to the filing of the complaint. While Ms. Jones was visiting Mr. Ohm's parents, Mr. Ohm allegedly assaulted her in front of her three children.
 {¶ 9} The same day that HCCS filed its complaint, the court held a shelter care hearing. At the hearing, the court set a date for arraignment and ordered the children to remain in the temporary custody of HCCS. HCCS placed Hailey and Emily with Kenneth and Christy Reed, who had cared for the girls in the past. HCCS placed Michael with his paternal grandparents, Steven and Terra Good, who had cared for him on weekends. At some point, however, HCCS removed Michael from the Goods' home and placed him in foster care.
 {¶ 10} At the arraignment, Mr. Ohm denied the allegations of dependency. Additionally, the magistrate entered a denial on Mr. Grice's behalf since he was still incarcerated. Ms. Jones initially admitted the allegations. However, a month later, after receiving appointed counsel, she withdrew her admission and entered a denial.
 {¶ 11} After the arraignment, the court appointed a guardian ad litem ("GAL") for the children. In August 2004, the GAL filed a report recommending that the children remain in the temporary custody of HCCS. That same month, the magistrate held an adjudicatory hearing. At the start of the hearing, Mr. Ohm changed his denial to an admission. The magistrate then heard testimony from Ms. Jones, Mr. Reed, and Martin Hammer, the social worker from Tri-County.
 {¶ 12} Ms. Jones admitted that she told Mr. Grice she was considering killing herself and the children. However, she testified that she made the statement three weeks prior to the date alleged in the complaint. Moreover, she testified that she only said it to hurt Mr. Grice. Ms. Jones stated that on the 20th, she told Mr. Grice that she was depressed but did not say anything about killing herself or the kids. Likewise, she testified that she told the Sheriff's Deputy that she was depressed but was not suicidal. Ms. Jones acknowledged that she previously attempted suicide in 2001. However, she noted that she placed Michael in his father's care before doing so. Ms. Jones testified that she checked herself into a respite center after her suicide attempt but did not receive any follow-up counseling. Ms. Jones also indicated that the description of her history with HCCS is accurate.
 {¶ 13} Ms. Jones testified that she is "always overwhelmed" by the responsibility of caring for three kids by herself. She stated that whenever she has felt unable to care for her children, she has made arrangements for others to care for them. Specifically, she testified that when she isn't feeling well, she often calls the Reeds or Goods and they take the children to their house. Ms. Jones testified that she first met Kenneth and Christy Reed while pregnant with Hailey. According to Ms. Jones, Hailey and Emily are with the Reeds every weekend. Additionally, she testified that Emily spends about 50% of the time at the Reeds. Ms. Jones also testified that Michael spends every weekend with his paternal grandparents, Steven and Terra Good.
 {¶ 14} Mr. Hammer, a licensed social worker with Tri-County, evaluated Ms. Jones in the early morning hours of June 21, 2004. He testified that she did not affirm the suicidal or homicidal thoughts but evaded the question, stating, "`you don't want to know'". He testified that she gave guarded and incomplete answers during the evaluation and minimized the seriousness of the questions posed. He stated that Ms. Jones's affect was incongruent with her stated mood and the seriousness of the threats, noting that she was smiling and laughing during the evaluation. Mr. Hammer testified that when he contacted the respite facility for Ms. Jones's past contact history, he learned that she had attempted suicide in September 2001. Thus, he stated that although Ms. Jones did not affirm the recent suicide threat, "it was considered credible that she would act on a suicide impulse * * *." After evaluating Ms. Jones, Mr. Hammer decided to arrange for emergency admission to a state-run psychiatric hospital. Mr. Hammer testified that he based this decision on (1) Ms. Jones's previous suicide attempt; (2) her recent threat of suicide; (3) her mental status at the time of the evaluations; and (4) the social stressors and her lack of an available support network. When questioned, Mr. Hammer indicated that at the time, he did not consider the children to be in imminent risk of Ms. Jones acting on the homicidal impulse since he had been told that they were in someone else's care.
 {¶ 15} At this point, the state rested its case and Ms. Jones made a motion to dismiss the complaint, which the magistrate denied. Ms. Jones then called Mr. Reed to the stand. Mr. Reed testified that he and his wife have known Ms. Jones about two years. He testified that he and his wife care for Hailey and Emily every weekend and also watch them during the week when necessary. He stated that Ms. Jones has made arrangements with them in the past when she needed someone to care for the girls. Mr. Reed testified that they had the girls the weekend ending June 20, 2004. When they returned the girls the evening of the 20th, Mr. Reed and his wife talked to Ms. Jones. According to Mr. Reed, Ms. Jones told them that she had thought about just signing her children over to them and killing herself. He testified that he knew Ms. Jones was despondent but did not think she would actually kill herself. Mr. Reed stated that when he left that night, he had no concerns about the children's safety.
 {¶ 16} After Mr. Reed's testimony, the parties stipulated to the authenticity of the GAL's report and waived their right to cross-examination. At the conclusion of the adjudicatory hearing, the magistrate found the children to be dependent and proceeded immediately to the dispositional hearing. There, the parties stipulated that the two girls would remain in the temporary custody of HCCS for placement with the Reeds. They then discussed what to do about Michael. Ultimately, the magistrate ordered that he remain in the temporary custody of HCCS with placement in a foster home.
 {¶ 17} Subsequently, in September 2004, the magistrate filed a report setting forth the decision. Ms. Jones filed objections that same month. She also filed a motion to dismiss the complaint for failure to comply with R.C. 2151.35(B)(1) and Juv.R. 34(A), which state that the dispositional hearing shall not be held more than 90 days after the date on which the complaint was filed. One month later, the court allowed Ms. Jones to amend her objections in order to add an objection challenging the dispositional hearing. In January 2005, the court overruled Ms. Jones's three objections and adopted the magistrate's findings and orders. Ms. Jones now appeals and raises the following assignments of error:
ASSIGNMENT OF ERROR NO. 1
IT WAS ERROR FOR THE MAGISTRATE TO DENY MICHELLE JONES' MOTION TO DISMISS AT THE CLOSE OF THE PROSECUTION'S CASE-IN-CHIEF.
ASSIGNMENT OF ERROR NO. 2
THE TRIAL COURT WAS IN ERROR TO ENTER A FINDING OF DEPENDENCY IN THESE CASES.
ASSIGNMENT OF ERROR NO. 3
THE DISPOSITIONAL HEARING IN THESE CASES DID NOT COMPLY WITH THE REQUIREMENTS OF THE LAWS OF OHIO AND THE DUE PROCESS REQUIREMENTS OF THE CONSTITUTIONS OF THE UNITED STATES AND STATE OF OHIO, AND IT WAS ERROR FOR THE TRIAL COURT TO NOT DISMISS THESE CASES UNDER JUV.R. 34(A).
 {¶ 18} Because they are related, we will address Ms. Jones's first two assignments of error together. Here, Ms. Jones challenges the trial court's finding of dependency. First, she argues the court erred in denying her motion to dismiss at the close of the state's case. In essence, she argues that the state failed to present a prima facie case of dependency. Second, she argues that the children were not dependent because they were receiving adequate care due to informal arrangements she had made.
 {¶ 19} The state has the burden of establishing dependency by clear and convincing evidence. R.C. 2151.35(A). The clear and convincing standard is an intermediate one: It is more than a mere preponderance of the evidence, but is less stringent than the beyond a reasonable doubt standard used in criminal cases. Cross v. Ledford (1954), 161 Ohio St. 469,120 N.E.2d 118, paragraph three of the syllabus. See, also, State v.Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. The Supreme Court of Ohio has defined clear and convincing evidence as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.Cross; Schiebel. See, also, In re Estate of Haynes (1986),25 Ohio St.3d 101, 103-104, 495 N.E.2d 23.
 {¶ 20} In reviewing whether a lower court's decision is based upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of fact has sufficient evidence before it to satisfy the requisite degree of proof." Schiebel, 55 Ohio St.3d at 74. If there is some competent, credible evidence to support the lower court's judgment, then the reviewing court may not reverse it. Id.
 {¶ 21} R.C. 2151.04(C) provides that a child is dependent if his or her "condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." A finding of dependency under R.C. 2151.04(C) focuses on whether the child is receiving proper care and support. In re Bibb (1980), 70 Ohio App.2d 117,120, 435 N.E.2d 96. Therefore, the determination must be based on the condition or environment of the child, not the fault of the parents. Inre Bishop (1987), 36 Ohio App.3d 123, 124, 521 N.E.2d 838; In reBirchfield (1988), 51 Ohio App.3d 148, 156, 555 N.E.2d 325. That being said, a court may consider a parent's conduct insofar as it forms part of the child's environment. See In re Burrell (1979), 58 Ohio St.2d 37,39, 388 N.E.2d 738. The parent's conduct is significant if it is demonstrated to have an adverse impact on the child sufficient to warrant state intervention. Id.
 {¶ 22} Having reviewed the record, we conclude there is some competent, credible evidence to support the court's finding of dependency. Ms. Jones admitted that she told Mr. Grice she was considering killing herself and the children. When Mr. Hammer asked Ms. Jones about this statement during the evaluation, she evaded the question and stated, "`you don't want to know'". Mr. Hammer testified that she gave guarded answers during the evaluation and minimized the seriousness of the questions posed. In addition, he testified that Ms. Jones affect was incongruent with her stated mood and the seriousness of the threats.
 {¶ 23} The record indicates that Ms. Jones attempted suicide in the past. According to Mr. Hammer, it "was considered credible that she would act on a suicide impulse * * *." He indicated that she lacked a credible support network to assure her safety. In addition, the record indicates that Ms. Jones told both Mr. Grice and the Sheriff's Deputy that she was depressed. Finally, the record reveals that after her evaluation, Ms. Jones entered the psychiatric hospital for a 72-hour emergency commitment.
 {¶ 24} At the hearing, Ms. Jones testified that she only made the statement about killing herself and the kids to hurt Mr. Grice. However, the court was free to disbelieve this after-the-fact explanation. See Inre Forrest, Athens App. No. 04CA1, 2004-Ohio-4189, at ¶ 53 ("[A] trier of fact is free to believe all, part, or none of the testimony of the witnesses who appear before it.") In fact, the evidence indicates that she did not give this explanation when Mr. Hammer questioned her about the statement. Instead, she gave guarded answers and evaded the question. Ms. Jones also emphasizes the fact that she made the statement three weeks prior to June 20th. Again, however, the court was free to disbelieve her testimony about when she made this statement. See Id. The evidence does indicate that she visited Mr. Grice in jail on the 20th. However, even if Ms. Jones made the statement three weeks earlier, this would not change our analysis. The court had every right to be concerned about the safety of Ms. Jones's children given the serious nature of her threats.
 {¶ 25} Given the evidence, especially Ms. Jones's homicidal ideations, the trial court could properly conclude that the children's environment was unsafe and that it warranted the state in assuming guardianship of the children. Since the state presented sufficient evidence of dependency to satisfy the clear and convincing standard, the court did not err in denying the motion to dismiss made at the close of the state's case.
 {¶ 26} Ms. Jones argues, however, that the children were not dependent since she had made informal arrangements for their care and they were receiving proper care under those arrangements. She notes that before going to the Sheriff's Office, she left the children in the care of a neighbor and instructed the neighbor to call the Reeds and Goods in the morning. Moreover, she notes that the Reeds and Goods took charge of the children before being asked to do so by HCCS.
 {¶ 27} The Supreme Court of Ohio has recognized that "a child who is receiving proper care pursuant to an arrangement initiated by the parent with a caregiver is not a dependent child * * *." In re Riddle,79 Ohio St.3d 259, 263, 1997-Ohio-391, 680 N.E.2d 1227.
 {¶ 28} In In re Hay (May 31, 1995), Lawrence App. No. 94CA23, we held that "[t]he trial court is to determine the issue of dependency as of thedate or dates alleged in the complaint." (Emphasis in original.) A review of the record reveals that the children were not receiving care under an informal arrangement on the date of the alleged dependency. Although the Reeds and Goods helped Ms. Jones care for her children, they were not providing full-time parental care for the children. Rather, the evidence indicates that the children were under Ms. Jones's care at the time she voiced her suicidal and homicidal ideations. And while Ms. Jones made emergency arrangements for the children's care before going to the Sheriff's Office, these arrangements occurred after the incident giving rise to the dependency complaint.
 {¶ 29} Ms. Jones compares this case to In re Reese (1982),4 Ohio App.3d 59, 446 N.E.2d 482. In Reese, the mother asked her aunt to care for her daughter so she could enter a drug rehabilitation program. After caring for the child for two months, the aunt filed a complaint alleging that she was a neglected child. The trial court determined that the girl was neglected and committed her to the temporary custody of children services. But the Tenth District Court of Appeals reversed the judgment, finding that the girl was not neglected since the aunt was providing proper parental care for her. See Id. at 61. The Court held that "the state's interest in assuming guardianship arises only if there is no one who is meeting the obligations of care, support, and custody, which are owed by the children's parents." Id. Thus, the court held that if proper parental care "is being provided by a relative pursuant to an arrangement initiated by the child's parent, then the child is not a neglected child." Id. at 62.
 {¶ 30} We find the present case readily distinguishable from Reese
where the mother's aunt was providing parental care for the child at the time of the complaint. Here, the Reeds and the Goods were not providing parental care for the children on the date alleged in the complaint. Rather, Ms. Jones was providing their parental care.
 {¶ 31} Ms. Jones also compares the present case to In re Bibb (1980),70 Ohio App.2d 117, 435 N.E.2d 96. There, the Hamilton County Welfare Department filed a complaint alleging that the mother's children were both dependent and neglected. The facts show that the mother had an emotional difficulty that caused her to be hospitalized nine times in eight years. On each occasion, being aware of the onset of her problem, the mother managed to place her children in a safe place with another person or with one institution or another. The mother's psychiatrist diagnosed her problems as recurrent episodic depression, but he saw no reason why she could not be a competent mother. Moreover, he stated that he never saw any psychiatric reason for removing the children from her custody. The mother's witnesses, whose testimony was uncontroverted, testified that the children were clean, properly clothed, and well fed. After hearing the evidence, the trial court found the two children to be dependent, but not neglected. Id. at 118. The First District Court of Appeals reversed the judgment, finding that the evidence was insufficient to sustain a finding of dependency. Id. at 121.
 {¶ 32} Again, we find the present case to be distinguishable. This is not a situation where Ms. Jones, recognizing that she had a problem, placed her children in someone's care so she could get help for her problem. Ms. Jones placed her children in the care of the Reeds and Goods only after the Sheriff's Office and HCCS became involved. Until that point, Ms. Jones was the one providing the parental care for her children.
 {¶ 33} Ms. Jones fails to realize that the complaint does not allege that the children were dependent because they had no one to care for them while she was at the Sheriff's Office and in the psychiatric hospital. Rather, the complaint is based on the children's environment prior to that time. Specifically, it is based on the unsafe environment created by Ms. Jones's suicidal and homicidal ideations. Clearly, Ms. Jones was able to make arrangements for her children's care before going to the Sheriff's Office. However, those arrangements occurred after the incident giving rise to the dependency complaint. Moreover, with those arrangements, nothing prevented Ms. Jones from retrieving her children and resuming their parental care, i.e., returning the children to an unsafe environment.
 {¶ 34} The focus in this case is the condition or environment of the children on the date alleged in the complaint. The Reeds and Goods were not providing parental care for the children at that time. Rather, the children were under Ms. Jones care. Moreover, given the evidence, the trial court could reasonably conclude that the children's environment at that time was unsafe and warranted the state in assuming their guardianship. Thus, because there is some competent, credible evidence to support the trial court's dependency finding, we overrule Ms. Jones's first two assignments of error and affirm the trial court's finding of dependency.
 {¶ 35} In her third assignment of error, Ms. Jones challenges the dispositional hearing, arguing that it failed to comply with statutory requirements and constitutional due process requirements. First, she argues that the trial court erred in failing to dismiss the complaint under Juv.R. 34(A) and R.C. 2151.35(B)(1).
 {¶ 36} R.C. 2151.35(B)(1) and Juv.R. 34(A) both provide that the dispositional hearing shall be held within 90 days of the filing of the complaint. If the dispositional hearing is not held within this 90-day time period, then the court "shall dismiss the complaint without prejudice." Juv.R. 34(A); R.C. 2151.35(B)(1).
 {¶ 37} In the present case, HCCS filed the complaint on June 22, 2004. Ninety days from this date would be September 20th. The evidence indicates that the magistrate held the dispositional hearing immediately after the adjudicatory hearing on August 31, 2004.[1] Thus, the magistrate held the hearing within the 90-day time requirements of Juv.R. 34(A) and R.C. 2151.35(B)(1).
 {¶ 38} Ms. Jones, however, argues that the hearing on August 31, 2004, cannot be considered a true dispositional hearing since the magistrate did not afford her the opportunity to present any evidence. She argues that she was not given an opportunity to call any witnesses. In addition, she argues that she was not given an opportunity to present evidence disputing the GAL's report.
 {¶ 39} A juvenile court may conduct the dispositional hearing in an informal manner. R.C. 2151.35(A)(1); Juv.R. 27(A). At the dispositional hearing, the juvenile court may "admit any evidence that is material and relevant * * *." R.C. 2151.35(A)(2)(b); Juv.R. 34(B)(2). Medical examiners and other investigators who prepared a social history may not be cross-examined, except upon consent of the parties, for good cause shown, or at the court's discretion. R.C. 2151.35(A)(2)(c); Juv.R. 34(B)(3). However, any party may offer evidence supplementing, explaining, or disputing any information contained in the social history or other reports utilized by the court at the dispositional hearing. R.C. 2151.35(A)(2)(c); Juv.R. 35(B)(3).
 {¶ 40} While Ms. Jones now complains about the procedure, the transcript of the dispositional hearing indicates that the parties stipulated to the disposition of Hailey and Emily. Specifically, Ms. Jones indicated at the hearing that she had no objection to the girls remaining in the temporary custody of HCCS with placement to the Reeds. Ms. Jones cannot stipulate to the disposition of Hailey and Emily and then argue that she did not have the opportunity to present evidence concerning their disposition. Because of her stipulation, she is precluded from challenging her daughter's disposition.
 {¶ 41} Moreover, the record indicates that Ms. Jones did not object to the state's recommended disposition for Michael. Although HCCS initially placed Michael with the Goods, it later removed him from their home and placed him in foster care. Prior to the dispositional hearing, Ms. Jones filed a motion asking the court to place him back with the Goods. At the hearing, the state recommended that Michael's disposition remain the same for the time being and that the parties reconvene at a later date for a hearing on Ms. Jones's motion. When asked her opinion, Ms. Jones neither agreed nor disagreed with the recommendation. Instead, she asked about visitation, indicating that she wanted to be sure Michael would be able to visit with his sisters in the new arrangement. The magistrate and the parties then discussed visitation and other matters. At the end of this discussion, the magistrate stated that she was going to put Michael in the temporary custody of HCCS with placement in foster care. Ms. Jones did not object when the magistrate said this. Nor did she inform the magistrate that she had evidence to present concerning disposition. Later in the hearing, the magistrate asked the parties if there were any other matters that needed to be addressed. Ms. Jones did not say anything at this time about presenting evidence as to disposition. Before ending the hearing, the magistrate again asked the parties if there were other matters to be addressed. And again, Ms. Jones did not say anything about presenting evidence as to disposition.
 {¶ 42} At no time during the hearing did Ms. Jones object to the way in which the magistrate was conducting the hearing. Moreover, she never once stated that she wanted to present evidence as to Michael's disposition. The record indicates that Ms. Jones had ample opportunity to make her objections known. Each time, however, she said nothing. For example, the record reveals the magistrate announced the disposition at the hearing. Ms. Jones could have objected and asserted her right to present evidence at that time but she did not. The record also indicates that the magistrate asked the parties twice if there were any other matters to be addressed. Ms. Jones could have informed the magistrate that she had evidence to present concerning Michael's disposition. However, she did not say anything at that time. Ms. Jones notes that during the adjudicatory phase, her attorney indicated that he had witnesses to present at the dispositional phase.[2] However, her attorney made no attempt to call these witnesses at the dispositional hearing. In fact, at the hearing, Ms. Jones gave no indication that she had evidence to present.
 {¶ 43} The record indicates that the issue of contention at the time of the dispositional hearing was whether Michael should remain in foster care or be placed with the Goods. At the hearing, the state recommended that Michael remain in foster care for the time being and that they reconvene at a later date to hear testimony about whether he should be placed with the Goods. Ms. Jones did not express any opposition to this recommended disposition. Furthermore, she did not attempt to present any evidence at the hearing. Because Ms. Jones did not object to the recommendation and did not attempt to present any evidence regarding Michael's disposition, the magistrate could reasonably conclude that she agreed with the recommended disposition.
 {¶ 44} Given Ms. Jones's failure to object to the manner in which the magistrate conducted the hearing, we agree with the trial court that she waived any argument relating to the dispositional hearing. However, Ms. Jones argues that the errors that occurred at the dispositional hearing rise to the level of plain error. We disagree, for we find no error.
 {¶ 45} The magistrate is not a mind reader. If Ms. Jones had evidence to present as to Michael's disposition, she needed to say something. Ms. Jones had ample opportunity during the dispositional hearing to inform the magistrate that she wanted to present evidence. However, not once did she say anything.
 {¶ 46} Moreover, from the record, it appears as if Ms. Jones agreed to the state's recommended disposition. As noted, she made no attempt to present any evidence at the hearing. In addition, she never objected to the state's recommended disposition. Nor did she object when, at the hearing, the magistrate adopted that recommended disposition.
 {¶ 47} Because the magistrate was not aware that Ms. Jones wished to present any evidence and could reasonably have concluded that she agreed to the recommended disposition, we find no error in the way that the magistrate conducted the hearing.
 {¶ 48} Finally, Ms. Jones argues that the trial court failed to make the reasonable efforts finding required under R.C. 2151.419(A)(1).
 {¶ 49} Under R.C. 2151.419(A)(1), a court that continues the removal of a child from the child's home must determine whether "the public children services agency * * * has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." R.C. 2151.419(B)(1) requires a court to issue written findings of fact setting forth the reasons supporting its determination under division (A)(1). In doing so, the court must "briefly describe the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from the child's home or enable the child to return safely home." Id. A court may not issue a dispositional order removing the child from the child's home "unless the court complies with [R.C. 2151.419] and includes in the dispositional order the findings of fact required by that section." R.C. 2151.353(H).
 {¶ 50} The court's decision in this case does not include any factual finding as to whether HCCS made reasonable efforts to reunite the children with Ms. Jones. However, as noted above, Ms. Jones expressly agreed that her daughters would remain in the temporary custody of HCCS for placement with the Reeds. By stipulating to the girls' disposition, Ms. Jones implicitly agreed to all aspects of that disposition, including the fact that the agency made reasonable efforts to eliminate the girls' continued removal from their home. Accordingly, we conclude the court's failure to include a reasonable efforts finding in its decision as to the girls' disposition is harmless error.
 {¶ 51} Unlike with the two girls, Ms. Jones never stipulated to a disposition for Michael. And while she did not object to the state's recommended disposition, she never expressly agreed to the recommendation either. Therefore, in deciding the proper disposition, the court was required to make a reasonable efforts determination and to include in its decision findings of fact setting forth the reason for that determination. See 2151.419(A)(1) and (B)(1).
 {¶ 52} We have previously recognized that a court's failure to comply with the requirements of R.C. 2151.419(B) may be harmless error if it is apparent from the record that the agency made reasonable efforts at reunification and the court's findings of fact clearly imply the reasonableness of those efforts. In re Keaton, Ross App. Nos. 04CA2785 and 04CA2788, 2004-Ohio-6210, at ¶ 71; In re Hulsey (Sept. 12, 1995), Adams App. No. 95CA599. However, the court's judgment entry does not contain any findings of fact from which we can discern the reasonableness of HCCS's efforts. In addition, it is not readily apparent from the record in this case whether HCCS made reasonable efforts to reunite Michael with his mother. The state did not present any evidence about HCCS's efforts at reunification during the dispositional hearing. It appears from discussions held during the hearing that HCCS was providing services to the family, but the specifics are not clear. A representative from HCCS indicated that Michael was receiving counseling. Ms. Jones also indicated that she was attending counseling arranged by HCCS. It also appears that she was submitting to periodic drug tests for HCCS. During the hearing, she stated, "Drug tests. Everything. I've done everything they've asked." It also appears from the record that HCCS had arranged for supervised visits between Michael and Ms. Jones. Finally, the record indicates that HCCS filed a case plan for Michael with a goal of reunification. The case plan indicates that it was prepared on June 21, 2004; however, it was not approved by the court until December 2004, three months after the dispositional hearing in this case.
 {¶ 53} Although the record gives some indication of HCCS's efforts at reunification, it does not give a clear picture of those efforts. Thus, we are unwilling to say that the error in this case is harmless. Accordingly, we sustain Ms. Jones's third assignment of error in part and remand this case so that the court can make a reasonable efforts determination with respect to Michael.
Judgment Affirmed in part, Reversed in part, and Cause Remanded.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED and that Appellee and Appellant split costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Kline, J.: Concur in Judgment and Opinion. Harsha, J.: Concurs in Judgment Only.
[1] Juv.R. 34(A) provides that the dispositional hearing shall be held at least one day after the adjudicatory hearing, unless "all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing and all parties consent to the dispositional hearing being held immediately after the adjudicatory hearing." See, also, R.C. 2151.35(B)(1). In the present case, the parties did not object when the magistrate indicated that she was going to proceed immediately to disposition.
[2] At the close of the state's case, the magistrate asked Ms. Jones's attorney if he had any witnesses to present regarding adjudication. When he responded affirmatively, the magistrate reminded him that the hearing would remain focused "strictly on adjudication at this point." At that time, the attorney responded, "That was my intention because I have a longer list of folks for disposition."