In re Minton.

(No. 767—Decided October 1, 1960.)

*Messrs. Spidel, Staley & Hole,* for appellants.
*Messrs. Marchal & Marchal,* for appellees.

*Per Curiam.* This is an appeal on questions of law from a judgment of the Juvenile Court of Darke County finding that James Minton, a child two and one-half years of age, was a dependent and neglected child, and making him a ward of the court and giving temporary care and custody to Mr. and Mrs. Lowell Gordon, the child's maternal aunt and uncle.

The parents of the child are Carl and Edna Minton, 28 and 25 years of age, respectively, who have been married for a period of eight years. They have two other children: Scotty, six years of age, and Randy, less than one year old. Both Scotty and James have, from time to time, resided in the homes of relatives. James has resided with the maternal grandmother and with the Gordons. During the year preceding the hearing, James resided with the Gordons a substantial portion of the time. The child was moved into the home of the Gordons, some-

times at the request of the mother, at other times at the behest of the maternal grandmother and at other times at the request of the Gordons. The mother requested the Gordons to care for the child, once when she had scalded her foot, at a later time when she had a miscarriage and at another time when she went to Florida.

The parents did not contribute financially to the care and maintenance of the child when it lived with the Gordons. In fact, the Gordons testified that they never asked for support, and did not expect to be paid.

There was some evidence presented to the effect that the mother of the child was not a good housekeeper, that the house was not tidy and that things laid around. In the main, the child was properly clothed and had enough to eat, although at times relatives helped to buy some food during periods of separation. This evidence relates to periods in the past, and for the most part when they lived in Richmond, Indiana. The evidence is to the effect that the parents would separate about twice each year.

The evidence shows that the Gordons became attached to Jimmy and wanted to adopt him. Counsel was consulted by the mother in regard to this matter. She opposed an adoption. Then it was that the Gordons refused upon demand to return Jimmy to his parents. On one occasion, the maternal grandmother attempted to remove Jimmy from the custody of his parents and return him to the custody of the Gordons. An altercation took place between the grandmother and the father, which resulted in his arrest. The grandmother took an aggressive position in favor of the adoption of Jimmy by the Gordons on the ground that the Gordons were childless. She testified she wanted the Gordons to have the child. The child received proper care in the Gordon home.

The mother of Jimmy testified that some of the trouble between her and the father was caused by interference by the grandmother; that she had decided now to make her own decisions; that she and the father had become reconciled and were living together in a suitable home; and that his earnings were adequate to support the family properly and to enable him to own and operate an automobile.

The evidence shows that while living in Richmond, Indiana,

Mrs. Minton filed a divorce action against her husband, and that, at the time of the hearing, this action was still pending.

The errors assigned are: The judgment is contrary to law and the Juvenile Court was without jurisdiction.

The pertinent finding of the court was as follows:

"* * * that said James Minton has lacked proper parental care because of the faults and habits of his parents, Carl Minton and Edna Minton; that the condition and environment of said James Minton is such as to warrant the court, in the interests of said child, in assuming his guardianship; and that said James Minton is therefore a dependent and neglected child."

Do the facts support a finding of dependency and neglect? The complaint by Mrs. Gordon was filed under Section 2151.27, Revised Code. A "neglected child" is defined in Section 2151.03, Revised Code, and a "dependent child" is defined in Section 2151.04, Revised Code.

Section 2151.03, Revised Code, in part provides:

"As used in Sections 2151.01 to 2151.54, inclusive, of the Revised Code, 'neglected child' includes any child:

"(A) Who is abandoned by his parents, guardian or custodian;

"(B) Who lacks proper parental care because of the faults or habits of his parents, guardian, or custodian;

"(C) Whose parents, guardian, or custodian neglects or refuses to provide him with proper or necessary subsistence, education, medical or surgical care, or other care necessary for his health, morals, or well being * * *."

Section 2151.04, Revised Code, in part provides:

"As used in Sections 2151.01 to 2151.54, inclusive, of the Revised Code, 'dependent child' includes any child:

"(A) Who is homeless or destitute or without proper care or support, through no fault of his parents, guardian, or custodian;

"(B) Who lacks proper care or support by reason of the mental or physical condition of his parents, guardian, or custodian;

"(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship."

Section 2151.03, Revised Code, was construed in the case of *In re Masters*, 165 Ohio St., 503, 137 N. E. (2d), 752. The second paragraph of the syllabus is as follows:

"Evidence of the confinement of a mother of minor children in a state hospital by reason of mental illness, during which confinement she had no funds with which to support the children and during which she was unaware of their whereabouts, is not sufficient evidence to support a finding by the Juvenile Court that such children are 'neglected' within the meaning of Section 2151.03, Revised Code."

On page 506, the court said:

"Again referring to Webster, we find that 'neglect' is defined as 'disregard of duty, from indifference or willfulness,' and 'refusal' is defined as the 'denial of anything demanded, solicited or offered for acceptance.' Both these definitions, using words such as 'disregard' and 'denial,' connote willfulness. One confined to a mental hospital for two years, without funds and without even certain knowledge of her children's whereabouts, can not, in our opinion, be guilty of a willful neglect of those children."

Again, in the case of *In re Kronjaeger*, 166 Ohio St., 172, 140 N. E. (2d), 773, the syllabus is as follows:

"1. To constitute 'abandonment' of a child, under subdivision (A) of Section 2151.03, Revised Code, there must be a willful leaving of a child by his parent, with an intention of causing perpetual separation; and to constitute 'neglect,' under subdivision (C) of said section, there must be a willful or indifferent disregard of the duty owed by a parent to his child. (*In re Masters*, 165 Ohio St., 503, approved and followed.)

"2. The determination of the lack of proper parental care because of the faults or habits of a parent as a basis for a finding that a child is neglected under subdivision (B) of Section 2151.03, Revised Code, must be made as of the time of the hearing on the charge of neglect."

On page 176, the court said:

"There is no evidence here that the mother intended to leave her child willfully, and with an intention of causing perpetual separation. *In re Masters, supra.* The evidence is to the contrary in that it was understood by the responsible parties

concerned that Donna Jean was to remain with the Hazletts only during the school year at the end of which time she was to be returned to her mother."

On page 177, the court quotes from Judge Putnam's dissenting opinion in the Court of Appeals, as follows:

" 'Here, again, we have a case where as soon as the parent insisted in exercising her proper parental right to have her own child returned to her, which had never been legally abandoned, recourse was had to Section 2151.03, Revised Code, "the neglected child statute," as a vehicle whereby to set up a situation for an adoption by a childless couple of a child which th'ey desired and to deprive a parent of its natural right to its offspring. It must be remembered in this case likewise that no effort was made to have this child declared a neglected child until after the parent insisted that the child be returned to it. This fact speaks louder than words that the motive was not because the child was neglected but rather that these people simply wanted this child. I cannot conceive that the Legislature ever had such a situation in mind when Sections 2151.01 to 2151.54, Revised Code, were enacted.' "

The cited case factually is similar to the instant case. Judge Putnam's comments are particularly appropriate and applicable to the motives of the complainant in this case. It appears that this proceeding was used, either to force an adoption or as a substitute for an adoption proceeding. This conclusion is supported by the fact that no action was taken with respect to the other two children. All had the same parental care and lived in the same environment in the home. See, also, *In re Hock* (Ohio App.), 55 Ohio Law Abs., 73.

The finding of the Juvenile Court was based on the ground of "neglect," as defined in Section 2151.03 (B), Revised Code, "lack of proper parental care." This condition must exist at the time of the hearing. *In re Kronjaeger, supra.* The finding was based on the ground of "dependency" as defined in Section 2151.04, Revised Code, concerning condition and environment. In our judgment, this condition must exist at the time of the hearing. Furthermore, in our judgment a finding of lack of proper parental care under the neglect statute, or poor environment under the dependency statute, cannot be based mere-

ly on evidence that the child during a portion of the time resided in the home of relatives, where the child received proper care in a good environment. The finding in this case must stand or fall on the evidence with respect to whether the child was receiving proper parental care in a proper environment in its own home at the time of the hearing. Under all the evidence, and under the facts and circumstances in this case, we cannot agree that the finding can be supported.

The jurisdiction of the court is challenged. The action for divorce was still pending in the courts at Richmond, Indiana, at the time of the hearing. The point is made that the court in Indiana had jurisdiction, and that, therefore, the Juvenile Court of Darke County was without jurisdiction. Also, it is contended that the Juvenile Court was without authority to make the child a ward of the court. The evidence shows that the parents and the child have lived for a considerable period of time in Darke County, Ohio. With respect to the divorce action, it does not appear what, if any, jurisdiction the Indiana court had or exercised over the child. Moreover, from the record it appears that the divorce action had been abandoned. Under Section 2151.27, Revised Code, the Juvenile Court has jurisdiction over a child who is a resident of the county. With respect to the order of the Juvenile Court in making the child a ward of the court, Section 2151.35, Revised Code, which enumerates in detail the orders which are authorized, provides that the court may place the child "in the custody of a relative," and further provides that the court may "make such further disposition as the court deems proper." In our opinion the court had jurisdiction to make the order. However, we find the order made was not supported by sufficient evidence. Assignment of error number one is well made. The second error assigned is not well made.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*

WISEMAN, P. J., CRAWFORD and KERNS, JJ., concur.