DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants, Thomas R. and Sherry R., have appealed from the judgment of the Medina County Court of Common Pleas, Juvenile Division, that adjudicated their minor child, E.R., dependent and placed her in the temporary custody of the Medina County Job and Family Services ("JFS"). This Court affirms.
 I. {¶ 2} Thomas R. ("Father") and Sherry R. ("Mother"), (collectively "Parents"), are the parents of E.R., born December 21, 1989, and at least six other children.[1] The present case involves only the status of E.R. Prior to the present case, six of the children were involved in another juvenile proceeding brought in Ashland County. In that earlier case, one child was adjudicated abused, having been struck by Mother with a plumbing pipe, and the other five children were adjudicated dependent. The abused child and the oldest dependent child were placed in a planned permanent living arrangement ("PPLA"), where they remained throughout their minority. The other four children, including E.R., were returned to Parents' home under the protective supervision of the agency. As a result of this incident, Mother pled guilty to an unspecified criminal charge, for which she served 60 days in jail and a term of probation.
 {¶ 3} Events related to the present matter began in September 2005, when Parents asked police to take E.R. to a hospital because she kept threatening to run away and did run away on the last day of her summer camp. The local hospital transferred E.R. to Windsor Hospital for mental health services on September 9, 2005.
 {¶ 4} Subsequently, JFS received a referral regarding E.R. and, on September 27, 2005, the agency filed a complaint in the juvenile court of Medina County, alleging that E.R. was neglected and dependent.[2] In the complaint, JFS claimed that E.R. had been hospitalized for suicidal and homicidal ideation and was a runaway risk. JFS also alleged that Mother had previously been convicted and incarcerated for crimes against a sibling of E.R., and that her four minor children had been taken into the custody of Ashland County Children Services. JFS further alleged that Mother was not cooperating with JFS's investigation of current allegations, and thereby placed E.R. at risk of neglect. JFS sought a disposition of protective supervision and an order for access to E.R., her siblings, and medical records.
 {¶ 5} Following an adjudicatory hearing, the trial judge dismissed the allegation of neglect and found E.R. dependent, pursuant to R.C. 2151.04(C) and R.C. 2151.04(D). A dispositional hearing was held on November 29, 2005, after which the trial court denied Parents' motion for custody and granted temporary custody to JFS.
 {¶ 6} The trial court adopted a case plan which required that: (1) E.R. would receive therapy and medication; (2) therapy would include family members at the appropriate time; and (3) Parents would receive case management services to ensure continuity of appropriate services. This last provision required Parents to sign requested releases and attend scheduled appointments. The case plan included one hour of supervised visitation weekly.
 {¶ 7} Parents have now appealed the denial of their motion for custody and the grant of temporary custody to J.F.S. and have presented four assignments of error for review.
 Assignment of Error Number One
"THE DECISION OF THE JUVENILE COURT FINDING THAT E.R. IS A DEPENDENT CHILD PURSUANT TO R.C. § 2151.04(C) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 {¶ 8} Parents have contended that the weight of the evidence fails to support the trial court's finding that E.R. is dependent pursuant to R.C. 2151.04(C). We disagree.
 {¶ 9} When reviewing the weight of the evidence, this Court applies the same test in civil cases as it does in criminal cases. Tewarson v. Simon (2001), 141 Ohio App.3d 103, 115. "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Alterations sic). Id., citing Thompkins,78 Ohio St. 3d at 387, quoting State v. Martin (1983),20 Ohio App. 3d 172, 175.
 {¶ 10} R.C. 2151.04(C) provides that a dependent child, within the meaning of that section, is one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]"
 {¶ 11} Dependency must be proven by clear and convincing evidence. R.C. 2151.35 and Juv.R. 29(E)(4). Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'"In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 12} Parents have argued that there are no conditional or environmental problems that warrant a finding of dependency in this case. They point to the fact that they voluntarily placed E.R. in a hospital for treatment and believe that they are capable of making decisions regarding her care. In response, JFS asserts that E.R. was a dependent child by virtue of the severity of her condition and the parental conduct which adversely impacted her and created a risk to her safety.
 {¶ 13} To establish dependency under R.C. 2151.04(C), the agency was required to present evidence of conditions or environmental elements that were adverse to the normal development of the child. In re A.C., 9th Dist. Nos. 03CA0053, 03CA0054, and 03CA0055, 2004-Ohio-3248, at ¶ 14, citing In reBurrell (1979), 58 Ohio St.2d 37, 39. The conduct of the parents is relevant to proof of dependency only insofar as it "forms a part of the environment of this child" and it is "only significant if it can be demonstrated to have an adverse impact upon the child sufficiently to warrant state intervention." Inre Burrell (1979), 58 Ohio St.2d at 39. The agency must specifically demonstrate a "nexus" between the child's reactions and the environmental situation described in the complaint. Id.
 {¶ 14} The evidence in the present case meets this standard. Dr. Patrick Enders, E.R.'s attending physician at Windsor Hospital, initially diagnosed E.R. with major depression, single episode, with severe and psychotic features. Two additional evaluations confirmed his diagnosis. He said he was struck by the child's homicidal and suicidal preoccupation, along with a command auditory hallucination, i.e., voices telling her to kill herself or her parents. E.R. told Dr. Enders she ran away from home in order to avoid following that advice.
 {¶ 15} Dr. Enders consulted with Parents as they considered E.R.'s treatment and next placement. At one point, Parents wanted to take E.R. out of the hospital to consult with Dr. Steve Burggraf, in Mansfield, Ohio, who had previously worked with E.R. Believing that it would be dangerous to remove E.R. from the hospital at that point in time, Dr. Enders "pink-slipped" E.R., a procedure which prevents the patient from being moved for 72 hours. Dr. Enders also informed JFS of the severity of E.R.'s situation. On October 1, 2005, Dr. Enders met again with Parents, but the meeting ended abruptly when Dr. Enders discovered that Parents were secretly tape-recording their conversation and wanted to tape record conversations with their daughter. From that point, the relationship between Dr. Enders and Parents became strained, and disagreements over E.R.'s treatment plan developed.
 {¶ 16} Dr. Enders explained that E.R. said she was afraid of her parents, and she did not like living with them because they argued and wrongfully accused her of things. Significantly, Dr. Enders said E.R. reacted negatively after visits with her family, and became upset even after talking about them. She continued to express suicidal and homicidal thoughts. Dr. Enders testified that he believed there was a disconnect between E.R.'s perception and Parents' understanding of the seriousness of her diagnosis. Importantly, he believes Parents have not accepted the role they have played in E.R.'s illness.
 {¶ 17} David Madjerich, intake investigator for JFS, explained that he first became involved in the case on September 19, 2005, when the agency received a referral regarding E.R. Parents were initially cooperative in their conversation with him, but refused to give Madjerich permission to speak to E.R. or to see her medical records. They also cancelled a follow-up appointment set for September 26, 2005, and indicated that they did not wish any help from the agency. Because the referral to JFS mentioned previous abuse allegations in Ashland County, Madjerich was obligated to investigate that matter and did so.
 {¶ 18} Thereupon, Madjerich filed a complaint in the juvenile court in Medina County, alleging neglect and dependency. He obtained an order from the court allowing him access to the child and her medical records. Upon further investigation, Madjerich testified that, while the home was not necessarily abusive or neglectful, he did believe there were "triggers" in the home that caused E.R. to harbor suicidal and homicidal thoughts and attempt to run away. According to Madjerich, E.R.'s perception is that she has been mistreated and scape-goated by her family. He believed that her perception of the home creates a dangerous risk to her, her siblings, and Parents. He anticipated that the child would be placed in a residential treatment center, then a foster home, and eventually be reunified with her parents.
 {¶ 19} Gillian Laribee-Reed, the guardian ad litem appointed to represent the best interests of E.R., testified that Parents generally presented as a normal family and demonstrated true concern for E.R. However, Laribee-Reed also believed that a major cause of E.R.'s problem is her home environment and the actions of her parents. The guardian ad litem explained that without family visits, E.R. was calm and lucid, but that after every visit with Parents, she would get very upset and have severe physical and emotional reactions. For example, after one visit, E.R. broke a window and used the broken glass to cut herself.
 {¶ 20} Mother testified in her own behalf. She explained that she sent E.R. to the hospital because the child said she was going to keep running away. Mother agreed that E.R. should be treated in a facility and gradually transitioned back home. She objected to foster care, and hoped the child could be placed with an older sister or a family from their church. She explained her conflict with Dr. Enders by saying that he believed there was a problem in the home, and she knows there is not. Mother denied treating E.R. any differently that the other children, denied unnecessary disciplinary paddling, denied withholding food other than dessert, and did not believe E.R.'s chores are excessive. She admitted writing a story for E.R. to illustrate that she cannot find everything she wants by running away. Mother sought to convey the idea, and apparently believed, that E.R. was running for refuge and seeking privileges from someone who could not really help her. She does not believe E.R.'s problems are mere teen-age rebellion, but believes her child's current complaints are directed towards not being able to drive a car, date, have a cell phone, and wear "belly shirts."
 {¶ 21} Parents contend that because they voluntarily placed their child in a safe place, she cannot be considered dependent. In support of their argument, Parents have cited cases where other parents voluntarily placed their children with friends or relatives, and the respective courts decided that the condition and environment of the children did not support a finding of dependency. Parents claim that this is "similar" to placing their daughter in a hospital.
 {¶ 22} The cases cited by Parents are distinguishable from the facts of the present case. First, Parents cite In re Darst
(1963), 117 Ohio App. 374. In that case, the court considered whether three children were dependent where the father had placed them with the maternal grandmother at the time of the death of his wife. The court found that, except for one event which occurred at the time of the wife's death, there was no indication that the father's general conduct over ten years rendered him unfit to have custody of the children. In addition, the children were healthy, normal, well behaved, and in excellent condition. The Darst court specifically found that the children's condition or environment did not warrant interference by the state pursuant to R.C. 2151.04 because relatives were providing the care and support otherwise owed by a parent. Darst,117 Ohio App. at 379. The present case differs in that the child has not been placed in a home with relatives; rather, E.R. is in an institution and has a serious diagnosis which has been specifically related to the family and the conditions of the home.
 {¶ 23} Second, Parents cite to In re Minton (1960),112 Ohio App. 361. In that case, the court considered whether a child was neglected or dependent where he had been placed with relatives at various times. The court indicated that a finding of dependency required consideration of whether the child was receiving "proper parental care in a proper environment in its own home at the time of the hearing." Minton,112 Ohio App. at 366. Where the child was receiving proper care in the home of relatives, the court found that there was no support for a finding of dependency. Id. at 362 and 366. Once again, the facts in the present case differ from those in Minton. E.R. was not receiving proper parental care in the home of relatives.
 {¶ 24} Parents' final citation to In re Masters (1956),165 Ohio St. 503, is inapposite because that case is based on neglect and does not involve dependency.
 {¶ 25} We are not persuaded that these cases are "similar" to the present case. The fact that E.R. is in an institution and has a serious diagnosis which has been specifically related to the family and the conditions of the home distinguishes the present case from those cited by Parents. We find that the conduct of Parents and conditions in their home, certainly as perceived by E.R., formed a critical part of the environment of the child and adversely impacted her to a most significant degree. E.R.'s negative reactions were closely connected to her family and home situation. Visits by the family or any discussion of returning home spurred outbursts of emotional or physically violent behavior. The trial court did not err in finding E.R. to be dependent pursuant to R.C. 2151.04(C).
 {¶ 26} We hold that the finding of the trial court that E.R. is dependent pursuant to R.C. 2151.04(C) is supported by clear and convincing evidence and is not against the weight of the evidence. Accordingly, Parents' first assignment of error is overruled.
 Assignment of Error Number Two
"THE DECISION OF THE JUVENILE COURT FINDING THAT E.R. IS A DEPENDENT CHILD PURSUANT TO R.C. § 2151.04(D) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 {¶ 27} Parents have argued that the trial court's finding that E.R. is dependent pursuant to R.C. 2151.04(D) is against the manifest weight of the evidence. We disagree.
 {¶ 28} R.C. 2151.04(D) provides that a dependent child, within the meaning of that section, is one as to whom both of the following apply:
"(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
"(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household."
 {¶ 29} Parents claim that R.C. 2151.04(D)(1) is not satisfied because the sibling who was previously adjudicated as abused does not currently reside in the household. That child was placed in a PPLA and never returned to the home. Parents point to the use of the present tense of the verb reside, i.e. "resides," in the first paragraph of the subsection as requiring that the previously adjudicated child must continue to reside in the household in order to justify a current finding of dependency. We find this reading to be inconsistent with previous decisions of this Court, as well as inaccurate.
 {¶ 30} First, to read the statute as Parents suggest discounts those critical situations where a sibling has been adjudicated abused, neglected, or dependent and has been removed from the home. It would only include those less serious situations where a sibling has been adjudicated abused, neglected, or dependent, but permitted to remain in the home. The reading advocated by Parents is unreasonable where the intent of the statute is to protect the next child from a similar fate. This Court has previously found that the 1989 amendment to R.C.2151.04, which added subsection D, reflects that the "legislature considered a parent's prior history with a child welfare agency significant in regard to a determination that a subsequent child might be dependent." In re W.C., 9th Dist. No. 22356,2005-Ohio-2968, at ¶ 18.
 {¶ 31} Furthermore, the reading advocated by Parents is inconsistent with prior holdings of this Court. This Court has previously held that children born after a sibling had been adjudicated abused, neglected or dependent and removed from the parents' home were properly found dependent pursuant to R.C.2151.04(D). See, e.g., In re C.M., 9th Dist. No. 22940,2006-Ohio-1908, at ¶ 1 and ¶ 10-11; In re D.B., 9th Dist. Nos. 03CA0015-M and 03CA0018-M, 2003-Ohio-4526, at ¶ 1-2, and ¶ 22-27; and In re Shuman (May 19, 1999), 9th Dist. No. 98CA007082. See, also, In re G.S., 10th Dist. No. 05AP-1321, 2006-Ohio-2530, at ¶ 2 and ¶ 6 [also finding a child dependent pursuant to R.C.2151.04(D) where a sibling had been adjudicated dependent and placed in permanent custody prior to her birth].
 {¶ 32} Finally, this Court finds that to the extent the use of the present tense of the verb "reside" is relevant to the meaning of R.C. 2151.04(D)(1), it appears to modify "any other child" and not "a sibling of the child." We note that the 1996 amendment to R.C. 2151.04(D)(1) made two changes. First, it added dependency to the list of previous adjudications which might comply with this section. Second, it added the phrase "any other child who resides in the household." In this case, it was a sibling of E.R. that had been adjudicated abused, as opposed to "any other child who resides in the household." The statute does not require that the sibling must currently reside in the household; but rather requires that a parent who resides in the same household as a child whose status is at issue, previously committed an act that resulted in an adjudication of neglect, abuse or dependency regarding a sibling of that child. E.R. was residing, and would reside if she were returned to the home, in a household where a parent previously committed an act that was the basis for an adjudication of abuse regarding a sibling of E.R. This is in compliance with R.C. 2141.04(D)(1).
 {¶ 33} Parents have not challenged the evidence regarding the second subsection of R.C. 2151.04(D). Therefore, we will not address it.
 {¶ 34} Accordingly, Parents' second assignment of error is overruled.
 Assignment of Error Number Three
"THE JOURNAL ENTRY FROM AN OUT-OF-COUNTY COURT FINDING NEGLECT IN PAST CASES INVOLVING CHILDREN NOT IN THE HOUSE DURING THE RELEVANT TIME ARE NOT ADMISSIBLE UNLESS PROPERLY AUTHENTICATED."
 {¶ 35} Parents have argued that a document purporting to be a copy of a judgment entry from the Ashland County juvenile court, dated May 9, 2000, was not properly authenticated and was erroneously admitted into evidence. The document indicated that that Mother had previously abused a sibling of E.R. and that E.R. had previously been adjudicated dependent. Without this evidence, Parents have argued, JFS has not presented clear and convincing evidence that E.R. is a dependent child.
 {¶ 36} The trial court found that the document was properly authenticated pursuant to Evid.R. 901(B)(7) and that the document is a public record or report.
 {¶ 37} Upon review, this Court finds that any error regarding the admissibility of this document must be considered harmless because Mother testified to the relevant substance of the document during the adjudicatory hearing. In addition, David Madjerich, social services investigator, also testified regarding his investigation of the incident. Such evidence was, therefore, properly before the trial court for its consideration.
 {¶ 38} In their Reply Brief, Parents have also argued that the substance of Mother's testimony may not properly be considered because her testimony followed the conclusion of JFS's case in chief. The argument is without merit. Consideration of evidence may properly be limited to the evidence presented in the plaintiff's case in chief where a timely and meritorious motion might have been dispositive at that point in time, such as a motion for judgment of acquittal in a criminal case or a motion for directed verdict. That is not the case here. At the conclusion of JFS's case in chief, Parents voluntarily chose to present further evidence in their own behalf. Mother testified to events which took place in the Ashland County juvenile court case. Among other things, Mother testified that all of her minor children were removed from the home as a result of her physical abuse of one child and that two children were never returned to the home. That testimony constituted proper evidence for the consideration of the trial court. It is also proper evidence for the consideration of this Court on review.
 {¶ 39} Parents' third assignment of error is overruled.
 Assignment of Error Number Four
"THE JUVENILE COURT ERRED BY ALLOWING IMPERMISSIBLE HEARSAY TO BE CONSIDERED DURING THE ADJUDICATORY HEARING."
 {¶ 40} Parents have asserted that the trial court erred in allowing impermissible hearsay to be admitted during the adjudicatory hearing. We disagree.
 {¶ 41} There must be strict adherence to the rules of evidence at the adjudicatory stage and hearsay is not admissible.In re Baby Girl Baxter (1985), 17 Ohio St.3d 229, 233. A trial court, however, possesses broad discretion with respect to the admission of evidence. State v. Maurer (1984),15 Ohio St.3d 239, 265. A trial court's determination on an evidentiary issue will only be overturned if it evinces an abuse of discretion, signifying an unreasonable, arbitrary, or unconscionable attitude. O'Brien v. Angley (1980), 63 Ohio St.2d 159, 163.
 {¶ 42} The purported hearsay statements which Parents have contested include: (1) statements by E.R. to Dr. Enders that she no longer wanted to live with her family, that she had suicidal and homicidal thoughts, and that she heard voices telling her to kill people; (2) statements made by the Windsor Hospital staff to Dr. Enders indicating that E.R. felt uncomfortable around Mother during visits, that she was paddled by Mother, and E.R.'s reasons for running away from home; and (3) statements by JFS investigator David Madjerich regarding conversations with the guardian ad litem about the Ashland County incident and that the girls slept together in the basement of the home, and conversations with E.R. regarding physical abuse.
 {¶ 43} The trial judge overruled objections to the first set of statements because he found that they were not admitted for the truth of the matter asserted. See Evid.R. 801(C). Dr. Enders testified that he did not credit everything E.R. said and explained that he was treating problems presented by E.R.'s perception of reality. His testimony regarding E.R.'s statements merely reflected her perception of reality. The trial court did not abuse its discretion in finding these statements were not offered for the truth of the matter asserted.
 {¶ 44} Even assuming those statements are hearsay; we cannot say the trial court erred in admitting them. Evid.R. 803(4) provides an exception to the hearsay rule for statements made for purposes of medical diagnosis or treatment. That rule provides:
"Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
E.R.'s statements to Dr. Enders were made for purposes of medical diagnosis and treatment. Consequently, the statements come within an exception to the rule against hearsay and their admission is not error.
 {¶ 45} The second set of statements includes purported statements by E.R. to staff members, who in turn conveyed those statements to Dr. Enders. The contested statements related to E.R.'s discomfort with Mother during visits, being paddled by Mother, and E.R.'s reasons for running away. In each case, evidence of these matters was otherwise properly before the court, thus making any reference to staff reports merely cumulative. For example, Dr. Enders testified that E.R. told him that she was uncomfortable when Mother had her sit in her lap, stroked her hair, and wanted hugs. From his own conversations with E.R., Dr. Enders testified that E.R.'s lack of comfort around her family and her efforts to avoid the destructive "voices" in her head caused her to run away. In addition, Dr. Enders testified that E.R. persistently told him she was afraid of Mother and of going home. In her own testimony, Mother admitted that she paddled E.R. as discipline when necessary. Dr. Enders' testimony was obtained for purposes of medical diagnosis and treatment and was permissible pursuant to Evid.R. 803(4). Mother's testimony regarding discipline was also properly before the trial court. The statements that were reported as staff observations were, therefore, cumulative and not prejudicial.
 {¶ 46} Finally, Parents also objected to statements by JFS investigator David Madjerich. Two of the contested statements related to a conversation with the guardian ad litem about the prior incident of abuse in Ashland County and that E.R. and her sisters slept in the basement of the home. The third contested matter was a statement by E.R. that she had been disciplined with a paddle by Mother. The admission of these statements fails to constitute reversible error. Evidence of the prior incident of abuse in Ashland County and evidence that E.R. had been paddled by Mother were otherwise properly before the court. These contested statements, therefore, were merely cumulative. Testimony that the three girls had their beds in the basement of the home was not significant or critical to the outcome of this case. Admission of these statements did not constitute prejudicial error.
 {¶ 47} Moreover, Parents have not demonstrated that the trial judge relied upon any of these challenged statements in his decision. Parents' complaint that the trial court did not include findings of fact and conclusions of law in his judgment entries, is not cognizable in light of Parents' failure to make a written request for such findings. See Civ.R. 52.
 {¶ 48} Parents' fourth assignment of error is without merit.
 III. {¶ 49} Parents' four assignments of error are overruled. The judgment of the Medina Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Carr, J. Moore, J. concur.
[1] The record is not clear as to the total number of children in this family. At least one child is grown and living in Indiana.
[2] JFS also filed complaints alleging that E.R.'s three minor siblings were negligent and dependent, but those complaints were later dismissed.