[Cite as *In re D.C.*, 2020-Ohio-5112.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE: D.C.

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Patricia A. Delaney, J.
Hon. Earle E. Wise, Jr., J.

Case No. 2020CA00093

O P I N IO N

CHARACTER OF PROCEEDINGS:     Appeal from the Stark County Court of
Common Pleas, Family Court Division,
Case No. 2020JCV0211

JUDGMENT:     Affirmed, in part; Reversed, in part, and
Remanded

DATE OF JUDGMENT ENTRY:     October 28, 2020

APPEARANCES:

For Appellee

BRANDON J. WALTENBAUGH
Stark County Department of
Job and Family Services
402 – 2nd Street, S.E.
Canton, Ohio  44702

For Appellant

AARON KOVALCHIK
116 Cleveland Ave., N.W.
Suite #808
Canton, Ohio  44702

*Hoffman, P.J.*

{¶1}   Appellant Tasha Reeves ("Mother") appeals the May 28, 2020 Judgment Entry and Findings of Fact and Conclusions of Law entered by the Stark County Court of Common Pleas, Family Court Division, which terminated her rights and responsibilities with respect to her minor child ("the Child"), and granted permanent custody of the Child to appellee Stark County Department of Job and Family Services ("SCDJFS").

STATEMENT OF THE CASE AND FACTS

{¶2}   On March 3, 2020, SCDJFS filed a Complaint, alleging the Child was dependent and/or neglected. The Complaint requested permanent custody be awarded to SCDJFS. SCDJFS filed the Complaint due to concerns relative to Mother's extensive history with SCDJFS which included multiple court involvements resulting in Mother's losing permanent custody of her four other children and Mother's recent involvement with children services in the state of Michigan regarding her ability to safely parent the Child. The Complaint also noted the concerns which gave rise to the actions involving Mother's four other children centered on Mother exposing the children to sexual offenders, failing to protect the children from sexual abuse, deplorable home conditions, Mother's mental health issues, and her faulty decision making.  In addition, despite ten years of involvement with SCDJFS, Mother had not improved her parenting skills and was still struggling with the same chronic issues.  Mother was unable to meet the Child's needs and unable to maintain a sanitary and safe home environment.

{¶3}   Prior to the filing of the instant Complaint, SCDJFS worked with Mother and the Child on a non-court basis, which included Goodwill home based services.  The Goodwill parenting coach reported concerns with Mother's ability to maintain a consistently clean home, failure to keep negative people out of the home, the keeping of

multiple animals in the home and not cleaning up animal feces which littered the floors throughout the home, and leaving dangerous items such as lighters within the Child's reach.

{¶4} Following a shelter care hearing, the trial court placed the Child in the emergency temporary custody of SCDJFS. The trial court scheduled the matter for trial on May 18, 2020. Upon Mother's request, the trial court continued the trial until May 28, 2020.

{¶5} Shawn Miller, the ongoing caseworker assigned to the family, testified he had worked with Mother for approximately a year and a half to two years, which included the Child and his two siblings. Miller indicated Mother had an extensive history with SCDJFS as well as children services in the state of Michigan. Child protective services in Michigan began investigating Mother in 2017, due to concerns Mother was exposing the Child to domestic violence and sexual offenders, and Mother's home did not have hot water. The state of Michigan did not file a formal complaint relative to the Child as Mother moved to Ohio. Miller noted SCDJFS was granted permanent custody of the Child's two siblings on February 27, 2020 (Case Nos. 2017JCV01236 and 2017JCV01237), and Mother's two oldest children in 2010.

{¶6} Miller testified SCDJFS opened the 2017 cases due to concerns surrounding Mother's lack of boundaries, her allowing inappropriate individuals to come and go in the home, the home conditions, and Mother's use of physical punishment. Mother completed a parenting evaluation at Northeast Ohio Behavioral Health as part of her case plan services in the 2017 cases. The results of the evaluation revealed Mother was in the below average range for intellect. The evaluator diagnosed Mother with Major

Depressive Disorder, Recurrent, and recommended Mother engage in comprehensive mental health treatment, successfully complete Goodwill parenting education, and obtain and maintain appropriate housing and employment. Mother was inconsistent in her mental health treatment and was unwilling to consider medication for her mental health issues.

**{¶7}** Following the 2017 cases, Mother agreed to work a non-court case with SCDJFS. The non-court case required Mother to engage in Goodwill Parenting home-based services as well as mental health treatment for herself and counseling for the Child. After Mother tested positive for cocaine, a safety plan was implemented. Mother repeatedly told Miller she planned to move to Michigan with the Child. All of the professionals working with the family had concerns about Mother's ability to care for the Child.

**{¶8}** Kimberly Gabel, an SCDJFS caseworker, accompanied Miller to four home visits. Gabel recalled, when she and Miller entered the Child's bedroom during a home visit in January, 2020, "the smell of marijuana truly punched us in the face to which we had to step back because it was so strong." Gabel and Miller observed two mattresses in the room. A man was lying on one of the mattresses and a device for smoking marijuana was on the other mattress.

**{¶9}** On February 28, 2020, Gabel presented at Mother's home to investigate a report regarding bruising observed on the Child. The report noted the Child had disclosed Mother had caused the bruising. Gabel recalled Mother behaved erratically throughout the visit. Mother refused to participate in an anger management program. Mother also refused to take medication for her mental health issues despite acknowledging she had

been diagnosed with depressive symptoms and bipolar disorder. The Child also disclosed he suffered burns after oil was dumped on him.

**{¶10}** April Bergert, the Goodwill parenting instructor assigned to the family, testified she worked with Mother through the Goodwill Parenting Home-Based Program as part of the case plan in the 2017 cases. Bergert noted Mother made "very limited progress" and did not successfully complete the program. Bergert stopped working with Mother in October, 2019, after Mother tested positive for cocaine. Bergert began working with Mother again in January, 2020.

**{¶11}** The concerns Bergert had during her first involvement with Mother remained. Mother continued to allow inappropriate individuals in and out of the home, including strangers. Mother was unable to maintain a clean home as evidenced by the animal feces found throughout the residence. Although Bergert addressed these concerns with Mother on multiple occasions, Mother failed to make any noticeable improvements. Mother informed Bergert it would be easier to return to Michigan and avoid "certain situations". Bergert also noted the Child was "very dirty, he had black feet, he wasn't wearing any clothes, there was [sic] multiple hygienic situations that were not addressed by [Mother]." Tr. at 71.

**{¶12}** Caseworker Chelsea Weigand, who was assigned to the family on March 27, 2020, testified the Child has special needs. The Child sees a counselor and is prescribed medication. The Child displays aggressive behaviors. Currently, the Child is placed in a foster home with two of his siblings. He is bonded with the foster family and his siblings. The foster parents are open to adopting the Child and his siblings. Weigand noted there were no appropriate relatives to care for the Child. When the Child was first

placed in SCDJFS custody, he was not toilet trained, but as of the date of the permanent custody hearing, the Child was using the toilet. The Child's behaviors had improved during his placement.

**{¶13}** After the presentation of evidence, SCDJFS rested its case "as to adjudication as well as the grounds for PC1". Tr. at 74. Mother moved to dismiss the complaint, arguing SCDJFS failed to prove the Child was dependent. The trial court denied Mother's motion, and proceeded with the best interest portion of the hearing.

**{¶14}** Mother testified on her own behalf. She stated she was working at Kentucky Fried Chicken. Mother indicated she had tested clean for all substances since 2019. She is currently engaged in counseling through Summit Psychological, and noted the Child was also in counseling. On cross-examination, Mother admitted she had lost permanent custody of four other children. She also acknowledged she had issues with appropriate parenting dating back to when she first became a mother.

**{¶15}** Mary Lou Sekula, the guardian ad litem for the Child, offered a statement to the court. Sekula stated she had been involved with Mother for over two years, including during the 2017 cases. The guardian noted the Child was not toilet trained when he was removed from Mother's home, but the foster mother was able to toilet train him within three weeks.[1] Sekula added the Child's behavior are "substantially better" in foster care. The guardian added she believed permanent custody was in the Child's best interest.

**{¶16}** Via Judgment Entry filed May 28, 2020, the trial court terminated Mother's parental rights, privileges, and responsibilities with respect to the Child and granted

---

[1] The Child was approximately 4 ½ years old when he was removed from Mother's care.

permanent custody of the Child to SCDJFS. The trial court issued a nunc pro tunc entry on June 3, 2020, to correct typographical errors in the May 28, 2020 Judgment Entry.

{¶17} It is from this judgment entry Mother appeals, raising the following assignments of error:

I. THE TRIAL COURT COMMITTED PLAIN ERROR BY PROCEEDING TO THE DISPOSITIONAL PORTION OF THE PERMANENT CUSTODY TRIAL PRIOR TO MAKING A FINDING REGARDING THE ADJUDICATION OF THE MINOR CHILD.

II. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD IS A DEPENDENT CHILD IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

III. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT AND SHOULD NOT BE PLACED WITH APPELLANT AT THIS TIME OR WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

IV. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTEREST OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

**{¶18}** This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I

**{¶19}** In her first assignment of error, Mother submits the trial court committed plain error by proceeding to the dispositional portion of the permanent custody hearing prior to making a finding regarding the adjudication of the child.

**{¶20}** R.C. 2151.35(B)(1) provides, in pertinent part:

> If the court at an adjudicatory hearing determines that a child is an abused, neglected, or dependent child, the court shall not issue a dispositional order until after the court holds a separate dispositional hearing. The court may hold the dispositional hearing for an adjudicated abused, neglected, or dependent child immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing. The dispositional hearing may not be held more than thirty days after the adjudicatory hearing is held. The court, upon the request of any party or the guardian ad litem of the child, may continue a dispositional hearing for a reasonable time not to exceed the time limits set forth in this division to enable a party to obtain or consult counsel.

**{¶21}** Juv. R. 34(A) provides, in pertinent part:

Where a child has been adjudicated as an abused, neglected, or dependent child, the court shall not issue a dispositional order until after it holds a separate dispositional hearing. The dispositional hearing for an adjudicated abused, neglected, or dependent child shall be held at least one day but not more than thirty days after the adjudicatory hearing is held. The dispositional hearing may be held immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing and *all parties consent* to the dispositional hearing being held immediately after the adjudicatory hearing. (Emphasis added).

**{¶22}** The plain language of R.C. 2151.35(B)(1) demonstrates the statute is inconsistent with Juv.R. 34(A). R.C. 2151.35(B)(1) allows a trial court to "hold the dispositional hearing for an adjudicated * * * dependent child immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing." By contrast, Juv .R. 34(A) is stricter because it also requires "all parties consent to the dispositional hearing being held immediately after the adjudicatory hearing."

**{¶23}** It is well-established, in instances of procedural conflict, Juvenile Rules, which were prepared and submitted by the Ohio Supreme Court to the legislature, must control over inconsistent statutory provisions purporting to govern procedural matters. See, *In re Vickers Children*, 14 Ohio App.3d 201, 470 N.E.2d 438 (1983); *In re Jones*, 29 Ohio App.3d 176, 504 N.E.2d 719 (1985)

**{¶24}** In the case at bar, while the parties may have been served before the permanent custody hearing with all the documents required for the hearing, there is no evidence in the record Appellant consented to the dispositional hearing being held immediately after the adjudicatory hearing. As such, we find the trial court did not comply with Juv.R. 34(A). Accord, *In re Malone*, 178 Ohio App.3d 219, 2008–Ohio–4412, 897 N.E.2d 672 ¶ 22. A trial court's failure to bifurcate proceedings, as required both by R.C. 2151.35(B)(1) and Juv.R. 34(A), constitutes reversible error. *In re Baby Girl Baxter,* 17 Ohio St.3d 229, 233 (1985).

**{¶25}** Mother's first assignment of error is sustained.

II

**{¶26}** In her second assignment of error, Mother maintains the trial court's finding the Child is a dependent child was against the manifest weight of the evidence and based upon insufficient evidence. We disagree.

**{¶27}** "[A] trial court's adjudication of a child as abused, neglected, or dependent must be supported by clear and convincing evidence." *In re R.R.*, 5th Dist. Richland App. No. 17CA03, 2017-Ohio- 5729 (Citation omitted); R.C. 2151.35; Juv.R. 29. Clear and convincing evidence is that which produces "in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In Re: Adoption of Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), quoting *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). When this Court reviews an adjudication to determine whether the judgment is supported by clear and convincing evidence, we must determine whether the trier of fact had sufficient evidence before it to satisfy the clear and convincing degree of

proof. *In Re: Christian,* 4th Dist. Athens No. 04CA10, 2004–Ohio–3146 (Citations omitted).

**{¶28}** R.C. 2151.04 defines "dependent child" as any child:

Who is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian;

Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian;

Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;

To whom both of the following apply:

The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.

Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.

**{¶29}** A finding of dependency under R.C. 2151.04 focuses on whether the child is receiving proper care and support. *In re Walling,* 1st Dist. No. C-050646, 2006-Ohio-810, ¶ 16, citing, *In re Bibb*, 70 Ohio App.2d 117, 120, 435 N.E.2d 96 (1980). Therefore,

the determination must be based on the condition or environment of the child, not the fault of the parents. *In re Bishop*, 36 Ohio App.3d 123, 124, 521 N.E.2d 838 (5th Dist. 1987); *In re Birchfield,* 51 Ohio App.3d 148, 156, 555 N.E.2d 325 (4th Dist. 1988). "That being said, a court may consider a parent's conduct insofar as it forms part of the child's environment. See *In re Burrell*, 58 Ohio St.2d 37, 39, 388 N.E.2d 738 (1979). The parent's conduct is significant if it is demonstrated to have an adverse impact on the child sufficient to warrant state intervention." *In re Ohm,* 4th Dist. Hocking No. 05CA1, 2005-Ohio-3500 at ¶ 21. *See, also*, *In re Colaner,* 166 Ohio App.3d 355, 360, 2006-Ohio-2404, 850 N.E.2d 794, 798, ¶ 26.

{¶30} We find the trial court's finding the Child was dependent is supported by clear and convincing evidence. The evidence presented at the hearing, as set forth in our Statement of the Case and Facts, supra, establishes the Child meets the definition of "dependent child" under R.C. 2151.04(D). First, the Child was "residing in a household in which a parent * * * household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child." R.C. 2151.04(D)(1). Further, the same "circumstances surrounding the abuse, neglect, or dependency of the sibling * * * [remain and] the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household." R.C. 2151.04(D)(2).

{¶31} Based upon the foregoing, we overrule Mother's second assignment of error.

III, IV

**{¶32}** In light of our disposition of Mother's first assignment of error, we find Mother's third and fourth assignments of error to be premature.

**{¶33}** The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed, in part, reversed, in part, and remanded for the trial court to conduct a dispositional hearing.


By: Hoffman, P.J.

Delaney, J.  and

Wise, Earle, J. concur