[Cite as *In re D.C.*, 2021-Ohio-2735.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: D.C. | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. Patricia A. Delaney, J.<br>Hon. Earle E. Wise, Jr., J.<br><br>Case No. 2021CA00047<br><br>O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2021JCV00073 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | August 9, 2021 |
| APPEARANCES: | |

| | |
|---|---|
| For Plaintiff-Appellee | For Mother Defendant-Appellant |
| BRANDON J. WALTENBAUGH<br>Stark County Department of Jobs and<br>Family Services<br>402 2nd Street, S.E.<br>Canton, Ohio 44702 | BERNARD L. HUNT<br>2395 McGinty Road, N.W.<br>North Canton, Ohio 44720 |

*Hoffman, P.J.*

**{¶1}** Appellant Tasha Reeves ("Mother") appeals the March 29, 2021 Judgment Entry and Findings of Fact and Conclusions of Law entered by the Stark County Court of Common Pleas, Family Court Division, which terminated her parental rights, privileges, and responsibilities with respect to her minor child ("the Child"), and granted permanent custody of the Child to appellee Stark County Department of Job and Family Services ("SCDJFS").

STATEMENT OF THE CASE AND FACTS

**{¶2}** On March 3, 2020, SCDJFS filed a Complaint, alleging the Child was dependent and/or neglected. The Complaint requested permanent custody be awarded to SCDJFS. SCDJFS filed the Complaint due to concerns relative to Mother's extensive history with SCDJFS which included multiple court involvements resulting in Mother's losing legal and permanent custody of her four other children and Mother's recent involvement with children services in the state of Michigan regarding her ability to safely parent the Child. The Complaint also noted the concerns which gave rise to the actions involving Mother's four other children centered on Mother exposing the children to sexual offenders, failing to protect the children from sexual abuse, deplorable home conditions, Mother's mental health issues, and her faulty decision making. In addition, despite ten years of involvement with SCDJFS, Mother had not improved her parenting skills and was still struggling with the same chronic issues. Mother was unable to meet the Child's needs and unable to maintain a sanitary and safe home environment.

**{¶3}** Prior to the filing of the instant Complaint, SCDJFS worked with Mother and the Child on a non-court basis, which included Goodwill home based services. The Goodwill parenting coach reported concerns with Mother's ability to maintain a

consistently clean home, failure to keep negative people out of the home, the keeping of multiple animals in the home and not cleaning up animal feces which littered the floors throughout the home, and leaving dangerous items such as lighters within the Child's reach.

**{¶4}** Following a shelter care hearing, the trial court placed the Child in the emergency temporary custody of SCDJFS. The trial court scheduled the matter for trial on May 18, 2020. Upon Mother's request, the trial court continued the trial until May 28, 2020.

**{¶5}** The matter proceeded to trial as scheduled on May 28, 2020. Via Judgment Entry filed May 28, 2020, the trial court found the Child to be dependent, terminated Mother's parental rights, privileges, and responsibilities with respect to the Child, and granted permanent custody of the Child to SCDJFS. The trial court issued a nunc pro tunc entry on June 3, 2020, to correct typographical errors in the May 28, 2020 Judgment Entry. Mother appealed the decision to this Court.

**{¶6}** We affirmed the trial court's decision finding the Child was a dependent child, but reversed the trial court's granting of permanent custody. *In re: D.C.,* 5th Dist. Stark No. 2020CA00093, 2020-Ohio-5112. We found, because there was no evidence in the record establishing Mother consented to the dispositional hearing being held immediately after the adjudicatory hearing, the trial court failed to comply with Juv.R. 34(A). *Id.* at ¶24. We further found the "trial court's failure to bifurcate proceedings, as required both by R.C. 2151.35(B)(1) and Juv.R. 34(A), constitute[d] reversible error." *Id.*

**{¶7}** On January 22, 2021, following this Court's remand, SCDJFS filed a motion to dismiss without prejudice as the matter could not be completed within the statutory time

constraints. The trial court granted the motion on the same day. Also, on the same day, SCDJFS refiled the complaint, again alleging the Child was a dependent and/or neglected child, and requesting permanent custody be granted to the Agency. The trial court conducted an emergency shelter care hearing and placed the Child in the emergency temporary custody of SCDJFS.

{¶8} On March 29, 2021, the trial court conducted a hearing on SCJFS's complaint.

{¶9} Shawn Miller, the ongoing caseworker assigned to the family, testified Mother had an extensive history with SCDJFS as well as children services in the state of Michigan. Child protective services in Michigan began investigating Mother in 2017, due to concerns Mother was exposing the Child to domestic violence and sexual offenders, and Mother's home did not have hot water. The state of Michigan did not file a formal complaint relative to the Child as Mother moved to Ohio. Miller noted SCDJFS was granted permanent custody of Mother's two oldest children in 2010, and two other children on February 27, 2020 (Case Nos. 2017JCV01236 and 2017JCV01237).

{¶10} Miller indicated Mother routinely allowed sex offenders around her children. SCDJFS had concerns regarding Mother's drug abuse. Mother's most recent case plan required her to engage in substance abuse treatment, complete parenting classes, and undergo mental health treatment. Despite the services, SCJFS continued to have concerns about Mother's ability to safely care for the Child. Mother's home was in deplorable condition and the odor of marijuana emanated from the residence. Mother permitted an individual who had lost custody of her own children to babysit the Child. Mother did not successfully complete parenting classes. Mother was unable to properly

supervise the Child during visits.  When the Child was removed from Mother's custody, he was four years old and not yet toilet trained.

{¶11} Kimberly Gabel, an SCDJFS caseworker, accompanied Miller on three successful home visits.  The home was in deplorable condition, filled with animal feces.  Gabel recalled a strong odor of marijuana coming from the Child's bedroom and an unidentified man was laying on a mattress in the room.  Gabel expressed her concerns about the Child's developmental delays and behavioral issues.  Gabel indicated she is also assigned to the newest SCDJFS case involving Mother's newborn.  The concerns in both cases are the same.

{¶12}  Jennifer Fire, the Goodwill parenting program supervisor, testified Mother was enrolled in the parenting skills training program and the home-based program.  Fire indicated Mother did not successfully complete the parenting skills training program.  Fire noted she observed "little to no improvement at all" in Mother's parenting practices.  Fire stated Mother failed to properly supervise the Child during visits.  On one occasion, the Child was alone, running around the parking lot.  Mother was re-enrolled in the home-based program from July, 2020, to March, 2021.  Fire observed similar concerns.

{¶13}  Dr. Aimee Thomas testified she conducted Mother's parenting evaluation in 2010, and again in 2018.  The 2018 evaluation was admitted into evidence.  Dr. Thomas stated Mother had prior involvement with SCJFS due to concerns with her exposing her children to inappropriate individuals.  Mother related a history of violent relationships.  Mother also had a history of unstable housing.  Dr. Thomas found Mother met the criteria for Major Depressive Disorder, Recurrent.   Mother also described symptoms of depression, including low energy, lack of motivation, and depressed appetite.   Mother

would have difficulty functioning for weeks at a time during the depressive episodes. Dr. Thomas noted Mother did not want to be prescribed an anti-depressant because of a prior negative reaction she had experienced with one. Mother did report a willingness to participate in individual counseling.

{¶14} Dr. Thomas recommended Mother engage in individual counseling and psychiatric services, successfully complete Goodwill parenting classes, and demonstrate an ability to financially provide for her family. Dr. Thomas indicated she would have concerns about Mother's ability to safely parent if Mother was unable to successfully complete these recommendations.

{¶15} The trial court found the Child to be dependent and all parties agreed to proceed with the trial on the dispositional request of permanent custody to SCDJFS.

{¶16} Shawn Miller again testified Mother had lost legal and permanent custody of multiple children due to concerns regarding the home conditions and Mother allowing inappropriate individual around the children. Mother's previous case plans required her to complete parenting classes, engage in individual therapy, and undergo anger management treatment. Miller also recommended Mother maintain sanitary home conditions. Miller testified Mother failed to complete her case plan. Mother tested positive for cocaine in 2019. Mother was unable to make any meaningful changes to her parenting practices.

{¶17} Kimberly Gabel again testified. Her testimony was similar to the testimony she provided at the May 28, 2020 hearing. Gabel concluded, although Mother is trying and she loves the Child, Mother is unable to make any meaningful changes.

{¶18} Kelly Stuhldreher testified she has been Mother's mental health counselor since November, 2020. Mother is diagnosed with Major Depressive Disorder, Recurrent (moderate), and anxious distress (moderate). Mother also had a personal history of psychological trauma. Mother meets with a nurse practitioner, who is prescribing her medication. Stuhldreher believed Mother was making progress, but acknowledged she and Mother have not discussed parenting skills or practices.

{¶19} Mother testified on her own behalf. Mother acknowledged she had recently missed a number of drug screens. Mother admitted she had lost both legal and permanent custody of four other children.

{¶20} Kimberly Gabel testified during the best interest portion of the hearing. The Child sees a counselor and is prescribed medication. The Child is on an Individualized Educational Plan ("IEP") and was able to transition from a specialized school setting into a regular classroom setting. When the Child was first placed in SCDJFS custody, he was not toilet trained, but as of the date of the permanent custody hearing, the Child was using the toilet. Gabel noted the Child still struggles with smearing feces on the wall. Gabel explained the Child is processing the trauma he has experienced. According to Gabel, the Child is "making huge strides and improvement."

{¶21} Currently, the Child is placed in a foster home with two of his siblings. He is bonded with the foster family and his siblings. The foster parents have adopted the Child's siblings. Gabel noted there are no appropriate relatives to care for the Child.

{¶22} Mary Lou Sekula, the guardian ad litem for the Child, offered a statement to the court. Sekula stated she did not believe Mother was able to safely care for the Child.

The guardian noted the Child was doing well in his current placement and she believed permanent custody was in the Child's best interest.

**{¶23}** The trial court issued Findings of Fact and Conclusions of Law with on March 29, 2021. Via Judgment Entries filed March 29, 2021, the trial court terminated Mother's parental rights, privileges, and responsibilities and granted permanent custody of the Child to SCDJFS.

**{¶24}** It is from this judgment entry Mother appeals, assigning as error:

THE TRIAL COURT ERRED IN ITS JUDGMENT ENTRY FINDING THAT THE MINOR CHILD SHOULD NOT BE PLACED WITH THE APPELLANT AT THE TIME OF THE TRIAL.

**{¶25}** This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I

**{¶26}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279.

**{¶27}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long term foster care.

**{¶28}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶29}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d)is present before proceeding to a determination regarding the best interest of the child.

**{¶30}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not

be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶31} R.C. 2151.414(E) provides, in pertinent part:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be

placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

\* \* \*

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

\* \* \*

(16) Any other factor the court considers relevant.

**{¶32}** We find the trial court's finding the Child could not and should not be placed with Mother within a reasonable period of time is supported by the evidence. SCDJFS has been involved with the family for over ten years. Despite years of case plan services, Mother has been unable to adequately and safely care for the Child. Mother did not successfully complete parenting classes, showing "little to no improvement at all." Mother

could not properly supervise the Child during visits. The deplorable condition of Mother's home remained a concern. Mother repeatedly allowed sexual offenders to be in the company of her children.

**{¶33}** Moreover, pursuant to R.C. 2151.414(E)(11), the trial court was required to find the Child could not and should not be placed with Mother within a reasonable time because Mother (1) has had her parental rights involuntarily terminated with respect to the Child's siblings, and (2) Mother failed to provide clear and convincing evidence to prove, notwithstanding the prior termination, she could provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the Child.

**{¶34}** Mother did not appeal the trial court's finding permanent custody was in the Child's best interest. We have reviewed the record and find the trial court properly considered and weighed the factors in R.C. 2151.414(D). We find the trial court's conclusion a grant of permanent custody to SCDJFS is in the best interest of the Child is supported by competent and credible evidence.

**{¶35}** Mother's sole assignment of error is overruled.

{¶36} The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.


By: Hoffman, P.J.

Delaney, J. and

Wise, Earle, J. concur