[Cite as *In re D.C.J.*, 2021-Ohio-4395.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN RE: D.C.J. | JUDGES:<br>Hon. Craig R. Baldwin, P.J.<br>Hon. W. Scott Gwin, J.<br>Hon. William B. Hoffman, J.<br><br>Case No. 2021CA00090<br><br>O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2020JCV01200 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | December 10, 2021 |
| APPEARANCES: | |

| | |
|---|---|
| For Plaintiff-Appellee | For Mother-Appellant |
| BRANDON J. WALTENBAUGH<br>Stark County Department of<br>Job and Family Services<br>402 2nd Street, S.E.<br>Canton, Ohio 44702 | AARON KOVALCHIK<br>116 Cleveland Avenue, N.W., Suite #808<br>Canton, Ohio 44702 |

*Hoffman, J.*

**{¶1}** Appellant Tasha Reeves ("Mother") appeals the July 19, 2021 Judgment Entry entered by the Stark County Court of Common Pleas, Family Court Division, which terminated her parental rights, privileges, and obligations with respect to her infant child ("the Child"), and granted permanent custody of the Child to appellee Stark County Department of Jobs and Family Services ("SCDJFS").

STATEMENT OF THE CASE AND FACTS

**{¶2}** On November 13, 2020, SCDJFS filed a Complaint, alleging the Child was dependent and requesting temporary custody be awarded to SCDJFS. SCDJFS filed the Complaint due to concerns relative to Mother's extensive history with SCDJFS which included multiple court involvements resulting in Mother's losing legal and permanent custody of four of her other five children. At the time of the filing of Complaint, the case involving her fifth child was scheduled for hearing on SCDJFS's motion for permanent custody on December 22, 2020. The trial court ultimately granted permanent custody of the fifth child to SCDJFS. This Court affirmed the trial court's decision. *In re: D.C.*, 5th Dist. Stark No. 2021CA00047, 2021-Ohio-2735.

**{¶3}** The Complaint noted the concerns which gave rise to the actions involving Mother's other children which included Mother exposing the children to sexual offenders, failing to protect the children from sexual abuse, deplorable home conditions, Mother's mental health issues, and her faulty decision making. In 2017, child protective services in the state of Michigan investigated concerns Mother had exposed her fifth child to a sexual offender and the fifth child had witnessed domestic violence between the sexual offender and another individual. Mother moved to Ohio before Michigan child protective services conducted the final home inspection. Despite ten years of involvement with

SCDJFS, Mother had not improved her parenting skills and was still struggling with the same chronic issues. Mother was unable to meet the Child's needs and unable to maintain a sanitary and safe home environment.

{¶4} Following a shelter care hearing, the trial court placed the Child in the emergency temporary custody of SCDJFS. The trial court conducted an adjudicatory hearing on February 9, 2021, and found the Child to be dependent and placed him in the temporary custody of SCDJFS. The trial court conducted a review hearing on May 7, 2021, and maintained the status quo. SCDJFS filed a motion for permanent custody on May 7, 2021.

{¶5} The trial court conducted a hearing on SCDJFS's motion for permanent custody on July 15, 2021.

{¶6} Kimberly Gabel, an SCDJFS caseworker, testified she was assigned to the family in February, 2021, but had an historical knowledge of SCDJFS's involvement with Mother and her other children. Gabel stated SCDJFS became involved with the Child at the time of his birth because of the Agency's decade long involvement with Mother. Gabel identified the judgment entries granting permanent custody of Mother's five other children to SCDJFS.

{¶7} Gabel noted, when Mother advised SCDJFS of her pregnancy with the Child, Mother reported she was serving as a surrogate for her friend and her friend's boyfriend, Terrence Pryor. Genetic testing excluded Pryor as the Child's father. Mother did not provide SCDJFS with the names of any other potential fathers for the Child.

{¶8} Mother's previous case plans required her to engage in comprehensive mental health treatment, including counseling, medication compliance, and case

management; engage in substance abuse services; and work with Goodwill through the parenting skills training program and home-based program. Mother was also required to maintain appropriate housing and a viable source of income. Gabel indicated Mother has failed to make any meaningful changes in order to safely parent any of her children. With respect to the instant action, Mother's case plan required her to engage in services at Comquest to address her substance use and sobriety, complete an assessment and comply with the color code drug screening requirements, engage in comprehensive mental health treatment, and establish paternity of the Child.

**{¶9}** Gabel stated Mother did not cooperate with establishing paternity. Mother's mental health counselor did not provide Gabel with Mother's records; therefore, Gabel was unable to verify whether Mother was being consistent with the services. In February, 2021, Mother completed an initial assessment at Comquest. The evaluator recommended Mother comply with a twice a week color code screening and continue mental health services. Mother tested positive for alcohol on February 19, 2021, May 14, 2021, and June 2, 2021. She tested positive for methamphetamines on April 27, 2021, and May 7, 2021, and positive for cocaine on June 16, 2021. Mother had failed to comply with drug testing in the month prior to the hearing. Gabel opined Mother had not demonstrated a commitment to the Child.

**{¶10}** During the best interest portion of the hearing, Gabel testified the Child is "a fairly typical child," and is a "very happy little infant." Tr. at 21. The Child has some asymmetry with his face and head, but he was in the process of getting a dock band which will reshape his head. The asymmetry does not hinder the Child's growth and development. The Child is bonded with his foster family. The foster family is ensuring a

bond between the Child and his siblings who are in other placements.  SCDJFS had not been able to find an appropriate relative placement for the Child, but continued to investigate possibilities.  Gabel had not observed a discernable attachment between Mother and the Child.  Gabel added the Child would benefit from adoption and she did not think any damage would occur if the trial court granted permanent custody to SCDJFS.

{¶11}  The trial court permitted Attorney Mary Lou Sekula, the Guardian ad Litem ("GAL"), to make a statement.  Attorney Sekula expressed her belief the Child was not bonded with Mother.  She added she did not observe Mother making efforts to build a bond with the Child.  When Attorney Sekula and the caseworker made an unannounced visit to Mother's home, they observed three other individuals at the residence.  One of the individuals had an extensive criminal history which included drugs.  Attorney Sekula observed two empty Crown Royal bottles on a table.  Mother stated the bottles belonged to a friend.  Attorney Sekula opined the benefits to the Child of a permanent loving home greatly outweighed any harm.

{¶12}  The trial court issued Findings of Fact and Conclusions of Law on July 19, 2021.  Via Judgment Entry filed the same day, the trial court terminated Mother's parental rights, privileges, and obligations, and granted permanent custody of the Child to SCDJFS.  Specifically, the trial court found Mother had involuntarily lost permanent custody of other children.  The trial court further found Mother failed to prove by clear and convincing evidence she could provide a legally secure placement as well as adequately care for the health, welfare, and safety of the Child.  The trial court concluded the Child

should not be placed with Mother and it was in the Child's best interest to grant permanent custody to SCDJFS.

{¶13} It is from this judgment entry Mother appeals, raising the following assignments of error:

I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT AND SHOULD NOT BE PLACED WITH APPELLANT AT THIS TIME OR WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶14} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I, II

**{¶15}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279.

**{¶16}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long term foster care.

**{¶17}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or

more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶18} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d)is present before proceeding to a determination regarding the best interest of the child.

{¶19} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶20} R.C. 2151.414(E) provides, in pertinent part:

> (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the

Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can

provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

* * *

(16) Any other factor the court considers relevant.

**{¶21}** As set forth in our statement of the facts and case, supra, SCDJFS has been involved with the family for over ten years. Despite years of case plan services, Mother has been unable to adequately and safely care for any of her children. Mother did not successfully complete her case plan services relative to the Child.

**{¶22}** The Child is "a fairly typical child," and is a "very happy little infant." Tr. at 21. The Child has some asymmetry with his face and head, but he was in the process of getting a dock band which will reshape his head. The asymmetry does not hinder the Child's growth and development. The Child is bonded with his foster family. The foster family is ensuring a bond between the Child and his siblings who are in other placements. The on-going caseworker did not observe a discernable attachment between Mother and the Child. The GAL did not believe the Child was not bonded with Mother. She did not observe Mother making efforts to build a bond with the Child. Attorney Sekula opined the benefits to the Child of a permanent loving home greatly outweighed the harm.

**{¶23}** We find the trial court's finding the Child should not be placed with Mother within a reasonable period of time is not against the manifest weight of the evidence. Moreover, pursuant to R.C. 2151.414(E)(11), the trial court was required to find the Child could not and should not be placed with Mother within a reasonable time because Mother (1) has had her parental rights involuntarily terminated with respect to the Child's siblings,

and (2) Mother failed to provide clear and convincing evidence to prove, notwithstanding the prior termination, she could provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the Child. We further find the trial court's finding it was in the Child's best interests to grant permanent custody to SCDJFS is not against the manifest weight of the evidence.

**{¶24}** Mother's first and second assignments of error are overruled.

**{¶25}** The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.

By: Hoffman, J.
Baldwin, P.J.  and
Gwin, J. concur